# EXHIBIT A

# IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
## COUNTY DEPARTMENT -CHANECRY DIVISION

| | | |
|---|---|---|
| Andrzej Pabian    Pro Se | ) | No. |
| *Plaintiff,* | ) | 2023CH00201 |
| | ) | Judge: Calendar, 9 |
| - *Versus* - | ) | |
| **PNC Bank** | ) | |
| **National City Bank, MidAmerica Bank** | ) | |
| | ) | |
| *Deffendedt* | ) | |

## COMMPLAINES FOR:  FRAUD IN THE CONCEALMENT, FRAUD IN THE INDUCEMENT,  LACK  OF  STANDING  /WRONGFUL FORECLOSURE

# <u>ARGUMENT</u>

I present evidence that has never been presented in the case (11ch23526 ) by an

attorney and is the key why PNC bank constructed froud and divert attention from to cove not real mortage

note (*copy are not evidence*), loan modyfication,loss mitigation affidavid PNC Mortgage

No assigment and orgintal note was presentation at the case ,as the record shows the PNC Bank was in

service of this loan:

The rights to the Pabian/Rejmer Intangible Obligation have been conveyed as a Transferable Record to the

FNMA 2005-73 Trust. For the rights to the Pabian/Rejmer Intangible Obligation not to have been stripped

away from the rights to the Pabian/Rejmer Note by that conveyance, the rights to the Pabian/Rejmer Note

must have also been transferred to FNMA 2005-73 Trust.

Even though the Pabian/Rejmer Intangible Obligation is owned by the FNMA 2005-73 Trust, it can only be

determined if the original Pabian/Rejmer Note had been physically delivered to the FNMA 2005-73 Trust  by

checking with the custodian of documents. Until then, there is no evidence that the FNMA 2005-73 Trust possessed in any manner the Pabian/Rejmer Note before rights to the Pabian/Rejmer Intangible Obligation were stripped away shortly after the May 31, 2005 signing.

The Pabian/Rejmer Mortgage Loan only exists through the tangible instruments creating it, the Pabian/Rejmer Note and the Pabian/Rejmer Mortgage. The sale of the rights to the Pabian/Rejmer Intangible Obligation to the FNMA 2005-73 Trust without stripping away the rights to the Pabian/Rejmer Intangible Obligation from the rights to the Pabian/Rejmer Note could only be accomplished with the accompanying negotiation of the Pabian/Rejmer Note and the accompanying assignment of the Pabian/Rejmer Mortgage to the FNMA 2005-73 Trust which has not happened. Whereas the Trust as a standalone party has not lawfully been conveyed the Pabian/Rejmer Note, much less been filed of record as a secured creditor.

The FNMA 2005-73 Trust has an interest in the Pabian/Rejmer Intangible Obligation; however, according to Illinois State Law, the FNMA 2005-73 Trust can only be entitled to enforce the Pabian/Rejmer Mortgage if they took the Pabian/Rejmer Mortgage by way of assignments pursuant to:

*765 ILCS §28. Recording instruments; prohibitions*
*Formerly cited as IL ST CH 30 ¶ 27*
*Deeds, mortgages, powers of attorney, and other instruments relating to or affecting the title to real estate in this state, shall be recorded in the county in which such real estate is situated; but if such county is not organized, then in the county to which such unorganized county is attached for judicial purposes. No deed, mortgage, assignment of mortgage, or other instrument relating to or affecting the title to real estate in this State may include a provision prohibiting the recording of that instrument, and any such provision in an instrument signed after the effective date of this amendatory Act shall be void and of no force and effect.*

*765 ILCS §30. Effect of recording as to creditors and subsequent purchasers*
*Formerly cited as IL ST CH 30 ¶ 29*
*All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record.*

*765 ILCS §7. Chain of record title; encumbrances*
*Formerly cited as IL ST CH 30 ¶ 1207*
*Upon each filing with the recorder under Sections 5 or 6, the recorded certificate or registrar's certification shall, from and after the date of the recording, constitute a new chain of record title in the registered owner of any estate or interest as shown on the certificate or registrar's certification, subject only to estates, mortgages, liens, charges, and interests as may be noted on the certificate or registrar's certification, and free from all others except the following:*

*(1) Unpaid general taxes, special taxes, or special assessments and unredeemed tax sales and forfeitures for nonpayment.*
*(2) Liens for federal income taxes payable to the United States, recorded in the office of the recorder before the recording of the certificate of title.*
*(3) Liens for taxes payable to the Illinois Department of Revenue, recorded in the office of the recorder befor the recording of the certificate of title.*
*(4) Mechanics' liens that are recorded in accordance with the statutory authority creating the liens.*
*After recording of certificates or registrar's certifications under Sections 5 or 6, title to lands shall be conveyed or encumbered in the same manner as title to unregistered lands. All instruments shown as memorials on the certificates of title or registrar's certifications of condition of title so recorded shall have th same force and effect as if they were filed with the recorder at the time they were filed or were otherwise memorialized on the certificates of title or registrar's certifications of condition of title. No instrument, however, that was filed or recorded in any other public office before the recording as provided in this Act, bt that was not duly registered, shall become effective or constitute public notice as to those lands as a result of the recording as provided in this Act, except that the instrument may be recorded thereafter.*

The FNMA 2005-73 Trust, who has an interest in the Pabian/Rejmer Intangible Obligation, can not show tha accompanied negotiations of the rights to the Pabian/Rejmer Note and accompanied transfers of the rights to the Pabian/Rejmer Mortgage have occurred. The rights to the Pabian/Rejmer Intangible Obligation have beer stripped from the rights to the Pabian/Rejmer Note and the rights to the Pabian/Rejmer Mortgage.

## No One Can Claim the Right to Enforce the Pabian/Rejmer Note



The Pabian/Rejmer Note has been signed by the Original Lender, PNC Bank, National Association S/B/M M America Bank, FSB, signed by Joshua D Bush as Document Custody Specialist. The instructions preceding th signature state "Pay to the Order of _____ without Recourse", where PNC Bank, National Associatic S/B/M Mid America Bank, FSB has elected to transfer the Pabian/Rejmer Note **by possession alone** by virtu of an indorsement made pursuant to 810 ILCS §5/3-205 (b). With the Pabian/Rejmer Note indorsed in blank, on **contractual** rights of the Pabian/Rejmer Note would have been transferred, WITHOUT acquiring rights enforcement as defined in 810 ILCS §3-203 (a), as there is a lack of Agency relationship between th Pabian/Rejmer Note and the Pabian/Rejmer Mortgage filed of record, since a party cannot establish an Agenc relationship with an as-of-yet-unnamed payee.

*810 ILCS §5/3-205. Special indorsement; blank indorsement; anomalous indorsement.*
*(b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it*

*a "blank indorsement". When indorsed in blank, an instrument becomes payable to bearer and may b negotiated by transfer of possession alone until specially indorsed.*

*810 ILCS §3-203. Transfer of instrument; rights acquired by transfer.*
*(a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose giving to the person receiving delivery the right to enforce the instrument.*

The Pabian/Rejmer Mortgage filed of record is unperfected, as one can not perfect an instrument to an as-of-ye unnamed payee. For the Pabian/Rejmer Note to remain a perfected public County record, the secured Mortgag requires the identity of the subsequent payee(s) to be on the face of the Pabian/Rejmer Note and the assignmer of the Mortgage rights needs to be properly and timely filed of record in the Official Records of the Cook Count Recorder of Deeds Office.

PNC Bank, National Association S/B/M Mid America Bank, FSB, along with signing away all rights to th Pabian/Rejmer Note, wrote instructions that made its intention of negotiation of the Pabian/Rejmer Note clea The clear intention was that PNC Bank, National Association S/B/M Mid America Bank, FSB's negotiation c the Pabian/Rejmer Note will only be complete when the payee is named. The Pabian/Rejmer Note with an as-of yet-unnamed payee is not and can not be treated as a "bearer" instrument as no person will acquire any right t the Pabian/Rejmer Note until a payee is named. The Pabian/Rejmer Note with an as-of-yet-unnamed payee is a incomplete instrument pursuant to 810 ILCS §5/3-115.

*810 ILCS §5/3-115. Incomplete instrument*
*(a) "Incomplete instrument" means a signed writing, whether or not issued by the signer, the contents c which show at the time of signing that it is incomplete but that the signer intended it to be completed b the addition of words or numbers.*

*810 ILCS §3-110. Identification of person to whom instrument is payable.*
*(a) The person to whom an instrument is initially payable is determined by the intent of the perso whether or not authorized, signing as, or in the name or behalf of, the issuer of the instrument. Th instrument is payable to the person intended by the signer even if that person is identified in the instrumer by a name or other identification that is not that of the intended person...*

Under 810 ILCS §3-203 (a) a transfer of the Pabian/Rejmer Note through which rights can be acquired by transferee is defined as a delivery from one person to another person.

*810 ILCS §3-203. Transfer of instrument; rights acquired by transfer.*
*(a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose c giving to the person receiving delivery the right to enforce the instrument.*

When PNC Bank, National Association S/B/M Mid America Bank, FSB signed away all rights to tl Pabian/Rejmer Note to an as-of-yet-unnamed payee, PNC Bank, National Association S/B/M Mid America Ban FSB did not deliver the Pabian/Rejmer Note to another person as required of a transfer through which rights ca be acquired.

Beside the fact that all rights were released upon signature, or that the signing away of all rights did no accomplish a negotiation of the Pabian/Rejmer Note, Mid America Bank, FSB no longer has the entire rights t the Pabian/Rejmer Note. Mid America Bank, FSB must have <u>an entire interest</u> in the Pabian/Rejmer Note for negotiation to occur. The intangible interest in the Pabian/Rejmer Note has been transferred to the FNMA 2005-7 Trust. Mid America Bank, FSB can no longer claim <u>the entire rights</u> to the Pabian/Rejmer Note. Mid Americ Bank, FSB can not accomplish a negotiation of the Pabian/Rejmer Note.

Under 810 ILCS §7-501 Mid America Bank, FSB is now the only party that can accomplish a negotiation of th Pabian/Rejmer Note. Under 810 ILCS §3-203 (d), a negotiation of the Pabian/Rejmer Note can not occur unt Mid America Bank, FSB regains <u>an entire interest</u> in the Pabian/Rejmer Note. Mid America Bank, FSB can no accomplish a negotiation of the Pabian/Rejmer Note because Mid America Bank, FSB can no longer claim <u>th entire rights</u> to the Pabian/Rejmer Note. A negotiation of the Pabian/Rejmer Note can not occur until Mid Americ Bank, FSB regains <u>the entire rights</u> to the Pabian/Rejmer Note.

> *810 ILCS §7-501. Form of negotiation and requirements of due negotiation*
> *(a) The following rules apply to a negotiable tangible document of title:*
> *(1) If the document's original terms run to the order of a named person, **the document is negotiated b the named person's indorsement and delivery...**** (emphasis added)
>
> *810 ILCS §3-203. Transfer of instrument; rights acquired by transfer.*
> *(d) If a transferor purports to transfer less than the entire instrument, negotiation of the instrument doe not occur. The transferee obtains no rights under this Article and has only the rights of a partial assigne*

Mid America Bank, FSB transferred the rights to the Pabian/Rejmer Intangible Obligation to Fannie Mae an released the rights to the Pabian/Rejmer Note without naming a transferee. The rights to the Pabian/Rejme Intangible Obligation were transferred to the FNMA 2005-73 Trust so the Pabian/Rejmer Note will travel on without the rights to the Pabian/Rejmer Intangible Obligation. Whoever becomes the transferee of th Pabian/Rejmer Note, through being named payee, will not acquire the right to enforce the Pabian/Rejmer Note

### The Terms of the Pabian/Rejmer Mortgage have been Violated
### and the Pabian/Rejmer Mortgage is Unenforceable

PNC Bank, National Association S/B/M Mid America Bank, FSB has released all rights to the Pabian/Rejm
Note to an as-of-yet-unnamed payee. The Pabian/Rejmer Mortgage as a contract can only enforce its contractu
terms against the obligation evidenced by the Pabian/Rejmer Note.

There is no assignment of the Pabian/Rejmer Mortgage recorded in the Cook County Recorder of Deeds Offic
Therefore, Mid America Bank, FSB still has the rights to the Pabian/Rejmer Mortgage. However, having release
through signature, rights to the Pabian/Rejmer Note evidencing the obligation, those rights now have nothing t
enforce the Pabian/Rejmer Mortgage contractual terms against. The Pabian/Rejmer Mortgage is an unenforceabl
contract.

### Interest in the Pabian/Rejmer Intangible Obligation Can Not be Rejoined to Interest in the
### Pabian/Rejmer Note or the Pabian/Rejmer Mortgage

The FNMA 2005-73 Trust has rights to the Pabian/Rejmer Intangible Obligation. The FNMA 2005-73 Trust i
not named as payee on the Pabian/Rejmer Note and does not now have rights to the Pabian/Rejmer Note. For th
FNMA 2005-73 Trust to gain rights to the Pabian/Rejmer Note, the FNMA 2005-73 Trust would have to b
named payee.

Because the rights to the Pabian/Rejmer Mortgage were separated from the rights to the Pabian/Rejmer Intangible
Obligation, and will remain separate, the Pabian/Rejmer Mortgage is left with no way to enforce its conditions
over the obligation which should be evidenced by the Pabian/Rejmer Note, making the Pabian/Rejmer Mortgage
an unenforceable contract.

### With Interest in the Pabian/Rejmer Intangible Obligation Stripped Away and No Way to
### Enforce the Conditions Under the Pabian/Rejmer Mortgage,
### the Pabian/Rejmer Mortgage Contract is a Nullity

The Interest in the Pabian/Rejmer Intangible Obligation was separated from the rights to the Pabian/Rejmer No and the rights to the Pabian/Rejmer Mortgage, leaving the Pabian/Rejmer Note no Intangible Obligation to evidence and the Pabian/Rejmer Mortgage no Intangible Obligation to enforce conditions over.

Mid America Bank, FSB retained no beneficial interest in the Pabian/Rejmer Intangible Obligation after sellin the Pabian/Rejmer Intangible Obligation to Fannie Mae shortly after the May 31, 2005 signing. No acceptab assignments of the Pabian/Rejmer Mortgage to the FNMA 2005-73 Trust have been recorded into the Offici Records of the Cook County Recorder of Deeds Office. There is no evidence of negotiations of the Pabian/Rejm Note to the FNMA 2005-73 Trust. With no properly recorded owner of the Pabian/Rejmer Mortgage, there is n one to enforce the conditions over the Pabian/Rejmer Intangible Obligation which is no longer evidenced by th Pabian/Rejmer Note. The Pabian/Rejmer Intangible Obligation is no longer secured by the Pabian/Rejmer Propert

Having no specific properly secured owner of the limited beneficial interest of the Pabian/Rejmer Note, there no way

to enforce the stripped-away Pabian/Rejmer Intangible Obligation through the Pabian/Rejmer Note.

# Trust Information – GSE

Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73
Borrower – Andrzej Pabian and Agnieszka Rejmer
Date of Signing – May 31, 2005
Loan number – 197601
Property address – 572 N. White Pine Rd, Buffalo Grove, IL 60089
County – Cook
Lender – Mid America Bank, FSB
GSE Originator –
Amount – $263,200.00
Servicer –

MERS – No

Covenant 16 – Yes

Covenant 20 – Yes

Trustee – Fannie Mae

Trust name – Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73

Abbreviated name – FNMA 2005-73

on or before the Trust Closing Date of

RELEVANT DOCS

Promissory Note of Andrzej Pabian and Agnieszka Rejmer dated May 31, 2005, regarding a loan for $263,200.00. The Original Lender of the May 31, 2005 Pabian/Rejmer loan is Mid America Bank, FSB. The signed Note is indorsed by:

- PNC Bank, National Association S/B/M Mid America Bank, FSB, signed by Joshua D Bush as Document Custody Specialist, made payable to UNNAMED PAYEE

Mortgage of Andrzej Pabian and Agnieszka Rejmer dated May 31, 2008 and filed in the Official Records of the Cook County Recorder of Deeds Office on June 10, 20056 as ins# 0516114262.

Recordation/Assignment Statutes – UCC 3-203 – UCC 7-501

Link to Cook County recorders search website

http://162.217.184.82/i2/default.aspx?AspxAutoDetectCookieSupport=1#

*765 ILCS §28. Recording instruments; prohibitions*
*Formerly cited as IL ST CH 30 ¶ 27*
*Deeds, mortgages, powers of attorney, and other instruments relating to or affecting the title to real estate in this state, shall be recorded in the county in which such real estate is situated; but if such county is not organized, then in the county to which such unorganized county is attached for judicial purposes. No deed, mortgage, assignment of mortgage, or other instrument relating to or affecting the title to real estate in this State may include a provision prohibiting the recording of that instrument, and any such provision in an instrument signed after the effective date of this amendatory Act shall be void and of no force and effect.*

*765 ILCS §30. Effect of recording as to creditors and subsequent purchasers*
*Formerly cited as IL ST CH 30 ¶ 29*
*All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record.*

765 ILCS §7. Chain of record title; encumbrances
Formerly cited as IL ST CH 30 ¶ 1207
Upon each filing with the recorder under Sections 5 or 6, the recorded certificate or registrar's certification shall, from and after the date of the recording, constitute a new chain of record title in the registered owner of any estate or interest as shown on the certificate or registrar's certification, subject only to estates, mortgages, liens, charges, and interests as may be noted on the certificate or registrar's certification, and free from all others except the following:
(1) Unpaid general taxes, special taxes, or special assessments and unredeemed tax sales and forfeitures for nonpayment.
(2) Liens for federal income taxes payable to the United States, recorded in the office of the recorder before the recording of the certificate of title.
(3) Liens for taxes payable to the Illinois Department of Revenue, recorded in the office of the recorder before the recording of the certificate of title.
(4) Mechanics' liens that are recorded in accordance with the statutory authority creating the liens.
After recording of certificates or registrar's certifications under Sections 5 or 6, title to lands shall be conveyed or encumbered in the same manner as title to unregistered lands. All instruments shown as memorials on the certificates of title or registrar's certifications of condition of title so recorded shall have the same force and effect as if they were filed with the recorder at the time they were filed or were otherwise memorialized on the certificates of title or registrar's certifications of condition of title. No instrument, however, that was filed or recorded in any other public office before the recording as provided in this Act, but that was not duly registered, shall become effective or constitute public notice as to those lands as a result of the recording as provided in this Act, except that the instrument may be recorded thereafter.

ERÍR STATUTES SEE BELOW

810 ILCS §5/3-301. Person entitled to enforce instrument. "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or 3-418(d).

810 ILCS §5/3-302. (a) Subject to subsection (c) and Section 3-106(d), "holder in due course" means the holder of an instrument if: (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity, and (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a defense or claim in recoupment stated in Section 3-305(a).

*810 ILCS §5/3-305. "…An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument."*

*810. ILCS §5/3-501. (a) "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank or (ii) to accept a draft made to the drawee. (b) (2)* **Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument,** *(ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.(3) Without dishonoring the instrument, the party to whom presentment is made may (i) return the instrument for lack of a necessary endorsement, or (ii) refuse payment or acceptance for failure of the presentment to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule…"* (emphasis added)

### PRIOR SEE STATUTES ABOVE

*Conveyance*
*Deeds and other writings; record or copy as evidence; presumption of recital of seal*
*IL ST CH 765 § 5/35 West's Smith-Hurd Illinois Compiled Statutes Annotated*

> *West's Smith-Hurd Illinois Compiled Statutes Annotated*
> *Chapter 765. Property*
> *Real Property*
> *Act 5. Conveyances Act*

*765 ILCS 5/35*
*Formerly cited as IL ST CH 30 ¶ 34*
*5/35. Deeds and other writings; record or copy as evidence; presumption of recital of seal*
*Currentness*
*§ 35.*

*Every deed, mortgage, power or attorney, conveyance, or other writing, of or concerning any lands, tenements or hereditaments, which, by virtue of this act, shall be required or entitled to be recorded as aforesaid, being acknowledged or proved according to the provisions of this act, whether the same be recorded or not, may be read in evidence without any further proof of the execution thereof; and if it shall appear to the satisfaction of the court that the original deed, so acknowledged or proved and recorded,               is lost or not in               the power of the party wishing to use it, the record, or a transcript thereof, certified by the recorder in whose office the same may be recorded, may be read in evidence, in any court of this state, without further proof thereof; provided that if said deed, mortgage, power of attorney, conveyance, or other writing, or the acknowledgment thereto shall recite that the grantors therein sealed said instrument but the record of such instrument in the recorder's office fails to show the seal of said*

*grantors, it will be presumed that said instrument was properly sealed and that the omission of such seal arose in the transcription thereof in the recorder's office.*
ILLinois has it if the first instrument was recorded then the poa affecting must be recorded

*810 ILCS §3-203. Transfer of instrument; rights acquired by transfer.*

*(a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.*

*(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.*

*(c) Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of indorsement by the transferor, the transferee has a specifically enforceable right to the unqualified indorsement of the transferor, but negotiation of the instrument does not occur until the indorsement is made.*

*(d) If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this Article and has only the rights of a partial assignee.*

*810 ILCS §5/3-205. Special indorsement; blank indorsement; anomalous indorsement.*

*(a) If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement". When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person. The principles stated in Section 3-110 apply to special indorsements.*

*(b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement". When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.*

*(c) The holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable.*

*810 ILCS §7-501. Form of negotiation and requirements of due negotiation*

*(a) The following rules apply to a negotiable tangible document of title:*

*(1) If the document's original terms run to the order of a named person, <u>the document is negotiated by the named person's indorsement and delivery</u>...* (emphasis added)

*810 ILCS §3-110. Identification of person to whom instrument is payable.*

*(a) The person to whom an instrument is initially payable is determined by the intent of the person, whether or not authorized, signing as, or in the name or behalf of, the issuer*

*of the instrument. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person...*

*810 ILCS §5/3-115. Incomplete instrument*
*(a) "Incomplete instrument" means a signed writing, whether or not issued by the signer, the contents of which show at the time of signing that it is incomplete but that the signer intended it to be completed by the addition of words or numbers.*

*810 ILCS §5/9-102. Definitions and index of definitions*
*(a) Article 9 definitions. In this Article...*
*(3) "Account debtor" means a person obligated on an account, chattel paper, or general intangible. **The term does not include persons obligated to pay a negotiable instrument,** even if the instrument constitutes part of chattel paper.* (emphasis added)

*810 ILCS §5/9-109 Scope. § 9-109. Scope.*
*(d) Inapplicability of Article. This Article does not apply to:*
*(11) the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder, except to the extent that provision is made for:*
*(D) security agreements covering personal and real property in Section 9-604;*

*810 ILCS §5/3-301. Person entitled to enforce instrument*
*"Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or 3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.*
*Cite as 810 ILCS 5/3-301*

*810 ILCS 5/8-102. Definitions. (a) In this Article: (1) "Adverse claim" means a claim that a claimant has a property interest in a financial asset and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset. (2) "Bearer form," as applied to a certificated security, means a form in which the security is payable to the bearer of the security certificate according to its terms but not by reason of an indorsement. (3) "Broker" means a person defined as a broker or dealer under the federal securities laws, but without excluding a bank acting in that capacity. (4) "Certificated security" means a security that is represented by a certificate. (5) "Clearing corporation" means: (i) a person that is registered as a "clearing agency" under the federal securities laws; (ii) a federal reserve bank; or (iii) any other person that provides clearance or settlement services with respect to financial assets that would require it to register as a clearing agency under the federal securities laws but for an exclusion or exemption from the registration requirement, if its activities as a clearing*

*corporation, including promulgation of rules, are subject to regulation by a federal or state governmental authority. (6) "Communicate" means to: (i) send a signed writing; or (ii) transmit information by any mechanism agreed upon by the persons transmitting and receiving the information. (7) "Entitlement holder" means a person identified in the records of a securities intermediary as the person having a security entitlement against the securities intermediary. If a person acquires a security entitlement by virtue of Section 8-501(b)(2) or (3), that person is the entitlement holder. (8) "Entitlement order" means a notification communicated to a securities intermediary directing transfer or redemption of a financial asset to which the entitlement holder has a security entitlement. (9) "Financial asset," except as otherwise provided in Section 8-103, means: (i) a security; (ii) an obligation of a person or a share, participation, or other interest in a person or in property or an enterprise of a person, which is, or is of a type, dealt in or traded on financial markets, or which is recognized in any area in which it is issued or dealt in as a medium for investment; or (iii) any property that is held by a securities intermediary for another person in a securities account if the securities intermediary has expressly agreed with the other person that the property is to be treated as a financial asset under this Article. As context requires, the term means either the interest itself or the means by which a person's claim to it is evidenced, including a certificated or uncertificated security, a security certificate, or a security entitlement. (10) "Good faith," for purposes of the obligation of good faith in the performance or enforcement of contracts or duties within this Article, means honesty in fact and the observance of reasonable commercial standards of fair dealing. (11) "Indorsement" means a signature that alone or accompanied by other words is made on a security certificate in registered form or on a separate document for the purpose of assigning, transferring, or redeeming the security or granting a power to assign, transfer, or redeem it. (12) "Instruction" means a notification communicated to the issuer of an uncertificated security which directs that the transfer of the security be registered or that the security be redeemed. (13) "Registered form," as applied to a certificated security, means a form in which: (i) the security certificate specifies a person entitled to the security; and (ii) a transfer of the security may be registered upon books maintained for that purpose by or on behalf of the issuer, or the security certificate so states. (14) "Securities intermediary" means: (i) a clearing corporation; or (ii) a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity. (15) "Security," except as otherwise provided in Section 8-103, means an obligation of an issuer or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer: (i) which is represented by a security certificate in bearer or registered form, or the transfer of which may be registered upon books maintained for that purpose by or on behalf of the issuer; (ii) which is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations; and (iii) which: (A) is, or is of a type, dealt in or traded on securities exchanges or securities markets; or (B) is a medium for investment and by its terms expressly provides that it is a security governed by this Article. (16) "Security certificate" means a certificate representing a security. (17) "Security entitlement" means the rights and property interest of an entitlement holder with respect to a financial asset specified in Part 5. (18) "Uncertificated security" means a security that is not represented by a certificate. (b) Other definitions applying to this Article and the sections in which they appear are: Appropriate person Section 8-107 Control Section 8-106 Delivery Section 8-301 Investment company security Section 8-103 Issuer Section 8-201 Overissue Section 8-210 Protected purchaser Section 8-303 Securities account Section 8-501 (c) In addition, Article 12 contains general definitions and principles of construction and*

*interpretation applicable throughout this Article. (d) The characterization of a person, business, or transaction for purposes of this Article does not determine the characterization of the person, business, or transaction for purposes of any other law, regulation, or rule.*

# FRAUD EVIDANCE

Plaintiffs had a Forensic Chain of Title Securitization Analysis completed by qualified expert in to verify the

claims of this complaint. ( **Exhibit E** ) Affidavit of Joseph Esquivel

All documend,evidance  (**copy of note from 11ch 23526 case,**orginal note, cook couty

**record)  ( Exhibit A, B , C )**

1. Investigation proof loan was securitization by Federal National

Association" Fannie Mac " (**full raport  Exhibit D**) On these documents it

clearly indicates that the transactions were made

2. In 10/21/2010 , the bank made a decision and approved the loan modification for 120%

of my annual earnings,  ( **Exhibit F** ) then after approval, I started to pay 3(trial paymants)

installments and

I did     another 2 installments, then the bank repressant (Joshua G) said that he was to

*wait until the final approva loane modification,*   which never took place .

3.The Defendants/mortgagors Andrzcj Pabian and Agnieszka Rejmer have been

diligently attempting to modify the loan secured by the Property and was find   lie on

Loss Mitigation Affidavid statemant case 11ch 23526 (**Exhibit G     **)

4. applications were successfully completed, stateman on affidavid show somthing not

*true difrence between NOT RECICVED and COMPLIT or INCOMPLIT*

And few more was successfully completed (not listed ) and on a few applications were

actually finished in full.

**Statemant Loss Mitigation Review:**          **Evidence:**

June, 20, 2013 Declined workout          ( **Exhibit G 1**  ) Fax before complit 5/19/13

January 08, 2014 package not received          ( **Exhibit G 2** ) Showing package complit

March ,17,2014 package not received          ( **Exhibit G 3** ) Showing Package complit

April 23,2014 package not received          ( **Exhibit  G 4** ) Showing Package complit

September 08, 2015 package not received          ( **Exhibit G 5**  ) Package was complit

5. Octomber 27 ,2015 other  HAMP loan modyfication was complit, incomc was cut  Bank

statement showing 5,170  was  deposit on the account and the letter shows 3,393.95 it

looks like the bank has cut my earnings in order to refuse me to modify loan.  ( **Exhibit H**   )

6. At Octomber 2017 , the bank tried to sell the house without a court order, it shows that it

is one more proof  that the whole situation was one lie without any respect for me because they wanted to

steal everything I put in over $180,000 ,  house, and broken my family.

7. PNC Banck steadily increased payment over the years,going from $1,700 to $1936 and

eventually up to $2,325 only thieves and criminal do this

8. In November 2011, the bank showed its power to do anything and emptied my account

without any legal proces or court order,they left my family without a livelihood for more

than one month. Never got explanations why.

( **Exhibit I** )

I blame PNC Bank for this because your employees did not tell me the correct information –

I would have continued making these trial payments.

Your company seems to be choosing mony over family and life and people.

The fact that my property was located in flood zone was not disclosed to me and this is a

bad adjustable rate loan.

## PRAYER

 WHEREFORE PREMISES CONSIDERED  as  Prayer  for  Relief, and  for

the  foregoing  reasons, Plaintiffs  pray  that  Defendants  be  cited  to  appear  and

answer  herein,  and  that  upon  final  hearing,  Plaintiffs  be  awarded  judgment:

• Declaring  that  Defendants  lack  any  interest  in  the  subject  property :

-  Judgament Revers

- A refund of any wrongfully or improperly collect fees and payments to Plaintiffs to which it had no right;

- Pre and post judgment interest at the maximum rate allowed by law

- Monetary relif over $300,000 but not more than $ 2,000,000 for the fact that my marriage was broken up.

- Such other and further relif at law and /or equity to Defendants may be justly entitled including

but not limited to damages within the jurisdictional limiits of this Court.

-publishing the result to the public

<div style="text-align: right">

Andrzej Pabian
1749 W. Golf  Rd   #187
Mt. Prospect , IL 60056
Tel.708-288-3991
Email: andrewp828@gmail.com

</div>

Dated :  JAN  9  2023

_____
    Andrzej Pabian

## VERIFICATION

We, Andrzej Pabian, Pro se are the Plaintiffs in
the above entitled matter and have personal knowledge to testify to the matters stated
therein. We have read the facts and allegations and declare under penalty of perjury in
and for the State of Illinois that the above is true and correct to the best of our
knowledge.


Andrzej Pabian, Pro Se
1749 W. Golf Rd.
Mt. Prospect , IL 60056

Chancery Division Civil Cover Sheet
General Chancery Section                                                    (12/01/20) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

ANDRZEJ  PABIAN
_____
                          Plaintiff        2023CH00201

            v.                             Case No: Judge: Calendar, 9 _____

PNC BANK, MIDAMERICA BANK
NATIONAL CITY BANK
                          Defendant

### CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

Only one (1) case type may be checked with this cover sheet.

| | | | | | |
|---|---|---|---|---|---|
| 0005 | ☐ Administrative Review | | 0017 | ☐ Mandamus | |
| 0001 | ☑ Class Action | | 0018 | ☐ Ne Exeat | |
| 0002 | ☐ Declaratory Judgment | | 0019 | ☐ Partition | |
| 0004 | ☐ Injunction | | 0020 | ☐ Quiet Title | |
| | | | 0021 | ☐ Quo Warranto | |
| 0007 | General Chancery | | 0022 | ☐ Redemption Rights | |
| 0010 | ☐ Accounting | | 0023 | ☐ Reformation of a Contract | |
| 0011 | ☐ Arbitration | | 0024 | ☐ Rescission of a Contract | |
| 0012 | ☐ Certiorari | | 0025 | ☐ Specific Performance | |
| 0013 | ☐ Dissolution of Corporation | | 0026 | ☐ Trust Construction | |
| 0014 | ☐ Dissolution of Partnership | | 0050 | ☐ Internet Take Down Action (Compromising Images) | |
| 0015 | ☐ Equitable Lien | | | | |
| 0016 | ☐ Interpleader | | | ☐ Other (specify) _____ | |

Atty. No.: _____    ☒ Pro Se 99500

Atty Name: _____

Atty. for: _____

Address: 1749 W. GOLF RD    187

City: MT. PROSPECT    State: IL

Zip: 60056

Telephone: 708 288-3991

Primary Email: andrewp828@gmail.com

Pro Se Only: ☒ I have read and agree to the terms of the Clerk's Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: andrewp828@gmail.com

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org
Page 1 of 1

# Exhibit A



71 / 23

# FIXED/ADJUSTABLE RATE NOTE

(LIBOR One-Year Index (As Published In *The Wall Street Journal*)-Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

May 31st          2005               DOWNERS GROVE                     ILLINOIS

572 N WHITE PINE RD, Buffalo Grove, IL 60089

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 263,200.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is      MID AMERICA BANK, FSB          . I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.500 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on July 1st, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 1st, 2035      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at 2650 WARRENVILLE ROAD. SUITE 500, DOWNERS GROVE, IL 60515-1721 or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,494.42      . This amount may change.

### (C) Monthly Payment Changes



Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of June, 2010 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date".

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Three Quarters percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.500 % or less than 2.750 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.500 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of the changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)   Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)   Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)   Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)   No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)   Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it, or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may

invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)     When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

........................................................(Seal)
                                                     -Borrower
ANDRZEJ FABIAN

........................................................(Seal)
                                                     -Borrower
AGNIESZKA REJMER

........................................................(Seal)
                                                     -Borrower

........................................................(Seal)
                                                     -Borrower

[Sign Original Only]

Pay to the Order of

Without Recourse
PNC Bank, National Association

Joshua D Bush
Document Custody Specialist

PAY TO THE ORDER OF

WITHOUT RECOURSE
NATIONAL CITY MORTGAGE CO.

KATHY MAJESKI
LOAN REVIEW ADMINISTRATOR

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR—Single Family-Fannie Mae Uniform Instrument     Form 3188 6/01 W197605 6/04     Page 5 of 5

# Exhibit B

# FIXED/ADJUSTABLE RATE NOTE
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)-Rate Caps)

550405326

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

May 31st          2005                    DOWNERS GROVE                    ILLINOIS

572 N. WHITE PINE RD, Buffalo Grove, IL 60089

## 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 263,200.00      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is      MID AMERICA BANK, FSB          . I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.500     %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.    PAYMENTS

### (A)    Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on July 1st, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 1st, 2035          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at 2650 WARRENVILLE ROAD. SUITE 500, DOWNERS GROVE, IL 60515-1721 or at a different place if required by the Note Holder.

### (B)    Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,494.42          . This amount may change.

### (C)    Monthly Payment Changes

197601

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR-- Single Family-Fannie Mae Uniform Instrument   Form 3528 6/01   W197601 6/04      Page 1 of 5



*01 197601*

.Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)    Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of June,  2010                , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date".

### (B)    The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C)    Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  Two  and Three Quarters            percentage points (  2.750    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D)    Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than  10.500    % or less than  2.750    %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than  10.500    %.

### (E)    Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F)    Notice of Changes

The Note Holder will deliver or mail to me a notice of the changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

197602

MULTISTATE FIXED/ADJUSTABLE RATE NOTE-- WSJ One-Year LIBOR--Single Family-Fannie Mae Uniform Instrument     Form 3528 6/01  W197602 6/04    Page 2 of 5

## 5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)    Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)    Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)    Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)    No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)    Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

197603

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR- Single Family-Fannie Mae Uniform Instrument    Form 3528 6/01   W197603 6/01      Page 3 of 5

## 8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.    WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.    UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)    Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may

MULTISTATE FIXED/ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR – Single Family-Fannie Mae Uniform Instrument   Form 3528 6/01   W197604 6/04

197604
Page 4 of 5

invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)     When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

..................................................................................(Seal)
                                                                    -Borrower
ANDRZEJ PABIAN

..................................................................................(Seal)
                                                                    -Borrower
AGNIESZKA REJMER

..................................................................................(Seal)
                                                                    -Borrower


..................................................................................(Seal)
                                                                    -Borrower

*[Sign Original Only]*

197605
Page 5 of 5

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR–Single Family-Fannie Mae Uniform Instrument   Form 3528 6/01   W197605 6/04

# Exhibit C

This document was prepared by:

LORAINE. DENTON,... ...................
National .City. Bank.................
ONE .NATIONAL. CITY. CENTER .STE. 415 E
INDIANAPOLIS, .IN. 46255...........
.............................................

When recorded, please return to:

NCB, .CLS .BRECKSVILLE..............
LOC.01-7120.............................
6750. MILLER. ROAD....................
BRECKSVILLE, OH 44141

Doc#: 0811310064 Fee: $48.60
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 04/22/2008 11:34 AM Pg: 1 of 7

——— State of Illinois ——————— Space Above This Line For Recording Data ———

14293607

## MORTGAGE
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is **March 31, 2008** ................................. *
The parties and their addresses are:
MORTGAGOR: ANDRZEJ PABIAN and
AGNIESZKA REJMER Husband and Wife

572 WHITE PINE RD BUFFALO GROVE, Illinois 60089
LENDER: National City Bank

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, sells, conveys, mortgages and warrants to Lender the following described property:
See attached Exhibit A

The property is located in **Cook** ............................................................. at .......................................................
(County)
572 WHITE PINE RD ............................................ , BUFFALO GROVE ........................................, Illinois 60089
(Address)                                      (City)                                                (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(You must specifically identify the debt(s) secured and you should include the final maturity date of such debt(s).)*

Maturity Date: March 2038

**ILLINOIS - HOME EQUITY LINE OF CREDIT MORTGAGE** (NOT FOR FNMA, FHLMC, FHA OR VA USE)                    *(page 1 of 6)*
© 1994 Wolters Kluwer Financial Services - Bankers Systems™ Form OCP-REMTG-IL 6/11/2005
VMP -C465(IL) (0506)                                   VMP Mortgage Solutions, Inc.

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All other obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument.

4. **MORTGAGE COVENANTS.** Mortgagor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Mortgagor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Mortgagor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees to provide to Lender copies of all payments when due and to perform or comply with all covenants. Mortgagor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

5. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

6. **DEFAULT.** Mortgagor will be in default if any of the following occur:

   **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

   **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

© 1994 Wolters Kluwer Financial Services - Bankers Systems™ Form OCP-REMTG-IL 5/11/2005

VMP®-C465(IL) (0508)

**Property.** Any action or inaction occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Mortgagor fails to maintain required insurance on the Property; (b) Mortgagor transfers the Property; (c) Mortgagor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Mortgagor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Mortgagor dies; (f) if more than one Mortgagor, any Mortgagor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Mortgagor and subjects Mortgagor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

7.  **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Upon default, Lender shall have the right, without declaring the whole indebtedness due and payable, to foreclose against all or part of the Property. This Security Instrument shall continue as a lien on any part of the Property not sold on foreclosure.

    At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

8.  **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Mortgagor breaches any covenant in this Security Instrument, Mortgagor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released.

9.  **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

© 1994 Wolters Kluwer Financial Services - Bankers Systems™ Form OCP-REMTG-IL 5/11/2005

VMP ;C465(IL) (0506)

(page 4 of 6)

Mortgagor represents, warrants and agrees that:



A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

10. **ESCROW FOR TAXES AND INSURANCE.** If otherwise provided in a separate agreement, Mortgagor may be required to pay to Lender funds for taxes and insurance in escrow.

11. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

12. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

13. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

14. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

15. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ............. 40,000.00 ................ . This limitation of amount does not include interest, attorneys fees, and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

16. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

17. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

18. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.
[Check all applicable boxes]
☐ Assignment of Leases and Rents   ☐ Other ...................................................................

19. ☐ **ADDITIONAL TERMS.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

........................................... 3|31|08 ...........    ......... Agnieszka Rejmer ..... 3|31|08 .....
(Signature) .   ANDRZEJ PABIAN         (Date)          (Signature)  AGNIESZKA REJMER              (Date)

**ACKNOWLEDGMENT:**
STATE OF ...... ILLINOIS ............... , COUNTY OF ... COOK ........................... )ss.
(Individual) This instrument was acknowledged before me this  31 st  day of . March ................ 2008 .......
by Andrzej Pabian and Agnieszka Rejmer
My commission expires:
        (Seal)

OFFICIAL SEAL
ERNEST S KAWECKI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/15/10

Ernest S. Kawecki

(page 6 of 6)

© 1994 Wolters Kluwer Financial Services - Bankers Systems™ Form OCP-REMTG-IL 5/11/2005

VMP®-C465(IL) (0506)

EXHIBIT A

SITUATED IN THE COUNTY OF COOK AND STATE OF ILLINOIS:

LOT 194 IN BUFFALO GROVE UNIT NO. 6, BEING A SUBDIVISION IN
THE EAST HALF OF SECTION 5, TOWNSHIP 42 NORTH, RANGE 11, EAST
OF THE THIRD PRINCIPAL MERIDIAN, ALL IN COOK COUNTY,
ILLINOIS.

Permanent Parcel Number:  03-05-216-031-0000
ANDRZEJ PABIAN AND AGNIESZKA REJMER,
AS JOINT TENANCY, AND NOT AS TENANTS
IN COMMON

572 WHITE PINE ROAD, BUFFLO GROVE IL 60089
Loan Reference Number  :  23835259
First American Order No:  14293607
Identifier: FIRST AMERICAN LENDERS ADVANTAGE

PABIAN
14293607                        IL

FIRST AMERICAN ELS
OPEN END MORTGAGE

When recorded return to:
First American Title Insurance Co.,
Equity Loan Services
1100 Superior Avenue, Suite 200
Cleveland, Ohio 44114
ATTN: NATIONAL RECORDINGS

NON CERTIFIED DOCUMENT MAY OR
MAY NOT BE A TRUE AND CORRECT COPY
OF THE RECORDS OF THE OFFICE
OF THE RECORDER OF DEEDS.

JAN 3 0 2018

# Exhibit D

Prospectus Supplement
(To REMIC Prospectus dated May 1, 2002)

# $270,718,810



## Guaranteed REMIC Pass-Through Certificates
## Fannie Mae REMIC Trust 2005-73

**The Certificates**

We, the Federal National Mortgage Association (Fannie Mae), will issue the classes of certificates listed in the chart on this page.

**Payments to Certificateholders**

We will make monthly payments on the certificates. You, the investor, will receive

- interest accrued on the balance of your certificate (except in the case of the accrual classes), and

- principal to the extent available for payment on your class.

- We may pay principal at rates that vary from time to time. We may not pay principal to certain classes for long periods of time.

**The Fannie Mae Guaranty**

We will guarantee that required payments of principal and interest on the certificates are distributed to investors on time.

**The Trust and its Assets**

The trust will own Fannie Mae MBS.

The mortgage loans underlying the Fannie Mae MBS are first lien, single-family, fixed-rate loans.

| Class | Group | Original Class Balance | Principal Type | Interest Rate | Interest Type | CUSIP Number | Final Distribution Date |
|---|---|---|---|---|---|---|---|
| FD ...... | 1 | $40,085,291 | PT | (1) | FLT | 31394EB31 | August 2035 |
| SD ...... | 1 | 40,085,291(2) | NTL | (1) | INV/IO | 31394EB49 | August 2035 |
| FA ...... | 1 | 54,839,714 | PAC/AD | (1) | FLT | 31394EB56 | August 2035 |
| SA ...... | 1 | 14,956,286 | PAC/AD | (1) | INV | 31394EB64 | August 2035 |
| SI ...... | 1 | 15,953,370(2) | NTL | (1) | INV/IO | 31394EB72 | August 2035 |
| ZB ...... | 1 | 10,374,585 | SUP | 5.5% | FIX/Z | 31394EB80 | August 2035 |
| FT ...... | 2 | 21,981,752 | PT | (1) | FLT | 31394EB98 | August 2035 |
| ST ...... | 2 | 21,981,752(2) | NTL | (1) | INV/IO | 31394EC22 | August 2035 |
| FM ...... | 3 | 51,449,500 | PT | (1) | FLT | 31394EC30 | August 2035 |
| PS(3) .... | 3 | 9,986,909 | PAC | (1) | INV | 31394EC48 | August 2035 |
| LS(3) .... | 3 | 4,044,773 | SUP | (1) | INV | 31394EC55 | August 2035 |
| SN ...... | 3 | 16,370,295(2) | NTL | (1) | INV/IO | 31394EC63 | August 2035 |
| FW ...... | 4 | 21,000,000 | PT | (1) | FLT | 31394EC71 | August 2035 |
| SW ...... | 4 | 21,000,000(2) | NTL | (1) | INV/IO | 31394EC89 | August 2035 |
| DF ...... | 4 | 28,776,000 | PAC/AD | (1) | FLT | 31394EC97 | August 2035 |
| WS(3) ... | 4 | 5,795,723 | SEG(PAC)/SCH/AD | (1) | INV | 31394ED21 | August 2035 |
| YS(3) ... | 4 | 2,052,277 | SEG(PAC)/SUP/AD | (1) | INV | 31394ED39 | August 2035 |
| ES ...... | 4 | 8,371,200(2) | NTL | (1) | INV/IO | 31394ED47 | August 2035 |
| EZ ...... | 4 | 5,376,000 | SUP | 5.5 | FIX/Z | 31394ED54 | August 2035 |
| R ...... | | 0 | NPR | 0 | NPR | 31394ED62 | August 2035 |
| RL ...... | | 0 | NPR | 0 | NPR | 31394ED70 | August 2035 |

(1) Based on LIBOR.
(2) Notional balances. These classes are interest only classes.
(3) Exchangeable classes.

If you own certificates of certain classes, you can exchange them for the corresponding RCR certificates to be issued at the time of the exchange. The SM and DS Classes are the RCR classes, as further described in this prospectus supplement.

The dealer will offer the certificates from time to time in negotiated transactions at varying prices. We expect the settlement date to be July 29, 2005.

---

**Carefully consider the risk factors starting on page S-11 of this prospectus supplement and on page 10 of the REMIC prospectus. Unless you understand and are able to tolerate these risks, you should not invest in the certificates.**

You should read the REMIC prospectus as well as this prospectus supplement.

The certificates, together with interest thereon, are not guaranteed by the United States and do not constitute a debt or obligation of the United States or any agency or instrumentality thereof other than Fannie Mae.

The certificates are exempt from registration under the Securities Act of 1933 and are "exempted securities" under the Securities Exchange Act of 1934.

---

## Banc of America Securities LLC

---

The date of this Prospectus Supplement is July 12, 2005

# TABLE OF CONTENTS

| | Page |
|---|---|
| AVAILABLE INFORMATION | S- 3 |
| INCORPORATION BY REFERENCE | S- 3 |
| RECENT DEVELOPMENTS | S- 4 |
| REFERENCE SHEET | S- 7 |
| ADDITIONAL RISK FACTORS | S-11 |
| DESCRIPTION OF THE CERTIFICATES | S-12 |
| GENERAL | S-12 |
| *Structure* | S-12 |
| *Fannie Mae Guaranty* | S-13 |
| *Characteristics of Certificates* | S-13 |
| *Authorized Denominations* | S-13 |
| *Distribution Dates* | S-13 |
| *Record Date* | S-13 |
| *Class Factors* | S-14 |
| *No Optional Termination* | S-14 |
| COMBINATION AND RECOMBINATION | S-14 |
| *General* | S-14 |
| *Procedures* | S-14 |
| *Additional Considerations* | S-14 |
| THE MBS | S-15 |
| FINAL DATA STATEMENT | S-16 |
| DISTRIBUTIONS OF INTEREST | S-16 |
| *Categories of Classes* | S-16 |
| *General* | S-16 |
| *Interest Accrual Periods* | S-17 |
| *Accrual Classes* | S-17 |
| *Notional Classes* | S-17 |
| *Floating Rate and Inverse Floating Rate Classes* | S-17 |
| CALCULATION OF LIBOR | S-17 |
| DISTRIBUTIONS OF PRINCIPAL | S-18 |
| *Categories of Classes* | S-18 |
| *Principal Distribution Amount* | S-18 |
| *Group 1 Principal Distribution Amount* | S-19 |
| *ZB Accrual Amount* | S-19 |
| *Group 1 Cash Flow Distribution Amount* | S-19 |
| *Group 2 Principal Distribution Amount* | S-19 |

| | Page |
|---|---|
| *Group 3 Principal Distribution Amount* | S-19 |
| *Group 4 Principal Distribution Amount* | S-20 |
| *EZ Accrual Amount* | S-20 |
| *Group 4 Cash Flow Distribution Amount* | S-20 |
| STRUCTURING ASSUMPTIONS | S-21 |
| *Pricing Assumptions* | S-21 |
| *Prepayment Assumptions* | S-21 |
| *Structuring Ranges* | S-21 |
| *Initial Effective Ranges* | S-21 |
| YIELD TABLES | S-22 |
| *General* | S-22 |
| *The Inverse Floating Rate Classes* | S-23 |
| WEIGHTED AVERAGE LIVES OF THE CERTIFICATES | S-26 |
| DECREMENT TABLES | S-27 |
| CHARACTERISTICS OF THE R AND RL CLASSES | S-30 |
| CERTAIN ADDITIONAL FEDERAL INCOME TAX CONSEQUENCES | S-31 |
| U.S. TREASURY CIRCULAR 230 NOTICE | S-31 |
| REMIC ELECTIONS AND SPECIAL TAX ATTRIBUTES | S-31 |
| TAXATION OF BENEFICIAL OWNERS OF REGULAR CERTIFICATES | S-32 |
| TAXATION OF BENEFICIAL OWNERS OF RESIDUAL CERTIFICATES | S-32 |
| TAXATION OF BENEFICIAL OWNERS OF RCR CERTIFICATES | S-32 |
| *General* | S-32 |
| *Combination RCR Classes* | S-33 |
| *Exchanges* | S-33 |
| TAX RETURN DISCLOSURE REQUIREMENTS | S-33 |
| PLAN OF DISTRIBUTION | S-33 |
| *General* | S-33 |
| *Increase in Certificates* | S-33 |
| LEGAL MATTERS | S-33 |
| SCHEDULE 1 | A- 1 |
| PRINCIPAL BALANCE SCHEDULES | B- 1 |

## AVAILABLE INFORMATION

You should purchase the certificates only if you have read and understood this prospectus supplement and the following documents (the "Disclosure Documents"):

* our Prospectus for Fannie Mae Guaranteed REMIC Pass-Through Certificates dated May 1, 2002 (the "REMIC Prospectus");

* our Prospectus for Fannie Mae Guaranteed Mortgage Pass-Through Certificates (Single-Family Residential Mortgage Loans) dated July 1, 2004 (the "MBS Prospectus"); and

* any information incorporated by reference in this prospectus supplement as discussed below under the heading "Incorporation by Reference."

You can obtain copies of the Disclosure Documents by writing or calling us at:

Fannie Mae
MBS Helpline
3900 Wisconsin Avenue, N.W., Area 2H-3S
Washington, D.C. 20016
(telephone 1-800-237-8627).

In addition, the Disclosure Documents, together with the class factors, are available on our corporate Web site at www.fanniemae.com.

You also can obtain copies of the Disclosure Documents by writing or calling the dealer at:

Banc of America Securities LLC
Capital Markets Operations
100 W. 33rd Street, 3rd Floor
New York, New York 10001
(telephone 646-733-4166).

## INCORPORATION BY REFERENCE

In this prospectus supplement, we are incorporating by reference the MBS Prospectus described above. In addition, we are incorporating by reference the documents listed below. This means that we are disclosing information to you by referring you to these documents. These documents are considered part of this prospectus supplement, so you should read this prospectus supplement, and any applicable supplements or amendments, together with these documents.

You should rely only on the information provided or incorporated by reference in this prospectus supplement, the REMIC Prospectus and the MBS Prospectus and any applicable supplements or amendments.

We incorporate by reference the following documents we have filed, or may file, with the Securities and Exchange Commission ("SEC"):

* our Annual Report on Form 10-K for the fiscal year ended December 31, 2003 ("Form 10-K");

* all other reports we have filed pursuant to Section 13(a) or 15(d) of the Securities Exchange Act of 1934 since the end of the fiscal year covered by the Form 10-K until the date of this prospectus supplement, excluding any information "furnished" to the SEC on Form 8-K; and

* all proxy statements that we file with the SEC and all documents that we file with the SEC pursuant to Section 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934 subsequent to the date of this prospectus supplement and prior to the completion of the offering of the certificates, excluding any information we "furnish" to the SEC on Form 8-K.

Any information incorporated by reference in this prospectus supplement is deemed to be modified or superseded for purposes of this prospectus supplement to the extent information contained or incorporated by reference in this prospectus supplement modifies or supersedes such information. In such case, the information will constitute a part of this prospectus supplement only as so modified or superseded.

We file annual, quarterly and current reports, proxy statements and other information with the SEC. You can obtain copies of the periodic reports we file with the SEC without charge by calling or writing our Office of Investor Relations, Fannie Mae, 3900 Wisconsin Avenue, NW, Washington, DC 20016, telephone: (202) 752-7115. The periodic and current reports that we file with the SEC are also available on our Web site. Information appearing on our Web site is not incorporated in this prospectus supplement except as specifically stated in this prospectus supplement.

In addition, you may read our SEC filings and other information about Fannie Mae at the offices of the New York Stock Exchange, the Chicago Stock Exchange and the Pacific Exchange. Our SEC filings are also available at the SEC's Web site at www.sec.gov. You also may read and copy any document we file with the SEC by visiting the SEC's Public Reference Room at 100 F Street, N.E., Washington, DC 20549. Please call the SEC at 1-800-SEC-0330 for further information about the operation of the Public Reference Room. We are providing the address of the SEC's Web site solely for the information of prospective investors. Information appearing on the SEC's Web site is not incorporated in this prospectus supplement except as specifically stated in this prospectus supplement.

## RECENT DEVELOPMENTS

On December 21, 2004, our Board of Directors (the "Board") announced the retirement of Chairman and Chief Executive Officer Franklin D. Raines and the resignation of Vice Chairman and Chief Financial Officer J. Timothy Howard. The Board further announced that the Audit Committee of the Board dismissed KPMG LLP as our independent auditor. On January 4, 2005, the Audit Committee of the Board approved the engagement of Deloitte & Touche LLP ("Deloitte") as our independent auditor. Deloitte will serve as our auditor for each of the fiscal years 2001, 2002, 2003 and 2004.

Stephen B. Ashley, a member of the Board, currently is serving as the non-executive Chairman of the Board. On June 1, 2005, the Board announced that it had selected Daniel H. Mudd, the former Chief Operating Officer of Fannie Mae, to be the new President and Chief Executive Officer. Mr. Mudd had been serving as the interim Chief Executive Officer since the retirement of Mr. Raines. Executive Vice President Robert Levin currently is serving as the interim Chief Financial Officer.

On December 15, 2004, the Office of the Chief Accountant of the Securities and Exchange Commission ("SEC") issued a statement (the "Statement") regarding certain accounting issues relating to Fannie Mae, including determinations by the SEC that we should (i) restate our financial statements to eliminate the use of hedge accounting under Financial Accounting Standard No. 133, Accounting for Derivative Instruments and Hedging Activities ("FAS 133"), (ii) evaluate the accounting under Financial Accounting Standard No. 91, Accounting for Nonrefundable Fees and Costs Associated with Originating or Acquiring Loans and Initial Direct Costs of Leases ("FAS 91") and restate our financial statements filed with the SEC if the amounts required for correction are material, and (iii) re-evaluate the information prepared under generally accepted accounting principles ("GAAP") and non-GAAP information that we previously provided to investors. On December 16, 2004, we filed a Current Report on Form 8-K with the SEC that includes a copy of the Statement.

As a result of the SEC's findings, we will restate our financial results from 2001 through June 30, 2004 to comply fully with the SEC's determination. In a Form 12b-25 filed with the SEC on November 15, 2004, we estimated that a loss of hedge accounting under FAS 133 for all derivatives

could result in recording into earnings a net cumulative loss on derivative transactions of approximately $9.0 billion as of September 30, 2004. (We estimate that as of December 31, 2004, this net cumulative after-tax loss was approximately $8.4 billion.) We also stated that there would be a corresponding decrease to retained earnings and, accordingly, regulatory capital. In a Form 12b-25 filed with the SEC on March 17, 2005, we stated that if we do not qualify for hedge accounting for mortgage commitments accounted for as derivatives since our July 1, 2003 adoption of Financial Accounting Standard No. 149, Amendment of Statement 133 on Derivative Instruments and Hedging Activities ("FAS 149"), we estimate that we would be required to record in earnings a net cumulative after-tax loss related to these commitments of approximately $2.4 billion as of December 31, 2004. We are working to determine the effect of the restatement, including the effect on each prior reporting period. We expect that the impact will be material to our reported GAAP and core business results for many, if not all, periods and will vary substantially from period to period based on the amount and types of derivatives held and fluctuations in interest rates and volatility. Our restated financial statements also will reflect corrections as a result of our misapplication of FAS 91 for each prior reporting period described above. We also will consider the impact, if any, of the SEC's decision on FAS 91 for periods prior to those described above.

Accordingly, on December 17, 2004, the Audit Committee of the Board concluded that our previously filed interim and audited financial statements and the independent auditor's reports thereon for the periods from January 2001 through the second quarter of 2004 should no longer be relied upon because such financial statements were prepared applying accounting practices that did not comply with GAAP. We have not yet filed our quarterly reports on Form 10-Q for the quarters ended September 30, 2004 and March 31, 2005 or our annual report on Form 10-K for the year ended December 31, 2004. The financial information regarding our anticipated results of operations for the quarter ended September 30, 2004 that was contained in our Form 12b-25 filed on November 15, 2004 and in a Form 8-K filed on November 16, 2004 was prepared applying the same policies and practices, and, accordingly, should not be relied upon. The Audit Committee has discussed the matters described above and in a Form 8-K filed with the SEC on December 22, 2004 with KPMG LLP, our independent auditor through December 21, 2004.

On September 20, 2004, the Office of Federal Housing Enterprise Oversight ("OFHEO") delivered its report to the Board of its findings to date of the agency's special examination. Among other matters, the OFHEO report raised a number of questions and concerns about our accounting policies and practices with respect to FAS 91 and FAS 133. On February 23, 2005, we announced that OFHEO notified our Board and management of several additional accounting and internal control issues and questions that OFHEO identified in its ongoing special examination, and directed that these matters be included in the internal reviews by the Board and management and reviewed by Deloitte. OFHEO indicated that it has not completed its review of all aspects of these issues, but has identified policies that it believes appear to be inconsistent with generally accepted accounting principles as well as internal control deficiencies that raise safety and soundness concerns. The issues and questions include the following areas: securities accounting, loan accounting, consolidations, accounting for commitments, and practices to smooth certain income and expense amounts. OFHEO also raised concerns regarding journal entry controls, systems limitations, and database modifications, as well as FAS 149 and new developments relating to FAS 91. A summary of the additional questions raised in OFHEO's ongoing special examination of Fannie Mae has been filed as an exhibit to a Form 8-K that we filed with the SEC on February 23, 2005.

Our Board and management are addressing the issues and questions raised by OFHEO. In addition, the Board designated its Special Review Committee to review the findings of OFHEO's September 2004 special examination report. This review, led by former Senator Warren Rudman of the law firm of Paul, Weiss, Rifkind, Wharton & Garrison ("Paul Weiss"), is focused on: accounting issues, including accounting policies, procedures and controls regarding FAS 91 and FAS 133; organization, structure and governance, including Board oversight and management responsibilities and resources; and executive compensation. Paul Weiss' work continues as it examines these areas and

other issues that may arise in the course of its review, reporting regularly to the Board. We will report to OFHEO regarding each of these issues and will continue to work with OFHEO to resolve these matters as part of our ongoing internal reviews and restatement process. In light of the foregoing, management has initiated a comprehensive review of accounting routines and controls, the financial reporting process and the application of GAAP, which will include the issues OFHEO has identified, as well as issues identified by management and/or Deloitte. Management, working with accounting consultants, will develop a view on these issues, which then will be reviewed with the Audit Committee, Deloitte and OFHEO. Upon conclusion of this review, our financial statements will be restated where necessary and submitted to Deloitte for review as part of its audit. We are providing periodic updates to the SEC and the New York Stock Exchange on the restatement. In addition, the SEC and the U.S. Attorney's Office for the District of Columbia are conducting ongoing investigations into these matters.

OFHEO is required to review our capital classification quarterly, and as of September 30, 2004 and December 31, 2004, classified us as "significantly undercapitalized." As a result of this classification, we submitted a capital restoration plan to OFHEO in January 2005, and on February 23, 2005, we announced that OFHEO approved our proposed capital restoration plan. Under the plan, we detail how we expect to meet our minimum capital requirement on an ongoing basis, as well as achieve OFHEO's 30 percent surplus capital requirement by September 30, 2005. A summary of the capital restoration plan was filed as an exhibit to a Form 8-K that we filed with the SEC on February 23, 2005. On May 19, 2005, OFHEO classified us as "adequately capitalized" as of March 31, 2005. OFHEO has noted that this classification is subject to revision pending the outcome of ongoing accounting reviews, and that this classification does not amend any existing capital restoration plans currently in place between Fannie Mae and OFHEO.

Forms 8-K that we file with the SEC prior to the completion of the offering of the certificates are incorporated by reference in this prospectus supplement. This means that we are disclosing information to you by referring you to those documents. You should refer to "Incorporation by Reference" above for further details on the information that we incorporate by reference in this prospectus supplement and where to find it.

## REFERENCE SHEET

**This reference sheet is not a summary of the transaction and does not contain complete information about the certificates. You should purchase the certificates only after reading this prospectus supplement and each of the additional disclosure documents listed on page S-3.**

**Assets Underlying Each Group of Classes**

| Group | Assets |
|---|---|
| 1 | Group 1 MBS |
| 2 | Group 2 MBS |
| 3 | Group 3 MBS |
| 4 | Group 4 MBS |

**Assumed Characteristics of the Mortgage Loans Underlying the MBS (as of July 1, 2005)**

| | Approximate Principal Balance | Original Term to Maturity (in months) | Approximate Weighted Average Remaining Term to Maturity (in months) | Approximate Weighted Average Loan Age (in months) | Approximate Weighted Average Coupon |
|---|---|---|---|---|---|
| Group 1 MBS | $120,255,876 | 360 | 343 | 16 | 6.398% |
| Group 2 MBS | $ 21,981,752 | 360 | 355 | 4 | 7.223% |
| Group 3 MBS | $ 65,481,182 | 360 | 358 | 2 | 6.000% |
| Group 4 MBS | $ 63,000,000 | 360 | 355 | 4 | 6.550% |

The actual remaining terms to maturity, weighted average loan ages and interest rates of most of the mortgage loans will differ from the weighted averages shown above, perhaps significantly.

### Class Factors

The class factors are numbers that, when multiplied by the initial principal balance of a certificate, can be used to calculate the current principal balance of that certificate (after taking into account principal payments in the same month). We publish the class factors on or shortly after the 11th day of each month.

### Settlement Date

We expect to issue the certificates on July 29, 2005.

### Distribution Dates

We will make payments on the certificates on the 25th day of each calendar month, or on the next business day if the 25th day is not a business day.

### Book-Entry and Physical Certificates

We will issue the book-entry certificates through the U.S. Federal Reserve Banks, which will electronically track ownership of the certificates and payments on them. We will issue physical certificates in registered, certificated form.

We will issue the classes of certificates in the following forms:

| Fed Book-Entry | Physical |
|---|---|
| All classes of certificates other than the R and RL Classes | R and RL Classes |

# Exhibit E

**REPORT REQUESTED BY:**
Andrzej Pabian and Agnieszka Rejmer
572 N. White Pine Rd
Buffalo Grove, IL 60089

## AFFIDAVIT OF JOSEPH R. ESQUIVEL JR.

I, Joseph R. Esquivel Jr, declare as follows:

1. I am over the age of 18 years and qualified to make this Affidavit.

2. I am a licensed private investigator of in the State of Texas, License # A20449.

3. I make this Affidavit based on my own personal knowledge.

4. I make this Affidavit in support of Mortgage Compliance Investigations Chain of Title Analysis & Mortgage Fraud Investigation requested by Andrzej Pabian and Agnieszka Rejmer regarding the Loan Instruments and the associated real property located at 572 N. White Pine Rd, Buffalo Grove, IL 60089, as referenced in the County Record.

5. I have no direct or indirect interest in the outcome of the case at bar for which I am offering my observations.

6. I have personal knowledge and experience in the topic areas related to the securitization of mortgage loans, real property law, Uniform Commercial Code practices, predatory lending practices, assignment and assumption of securitized loans, creation of trusts under deeds of trust, pooling and servicing agreements, issuance of asset-backed securities and specifically mortgage-backed securities by special purpose vehicles in which an entity is named as trustee for holders of certificates of mortgage backed securities, the foreclosure process of securitized and non-securitized residential mortgages in both judicial and non-judicial states, and the various forms of foreclosure-related fraud.

7. I perform my research through the viewing of loan level data records and Corporate/Trust Documents that have been obtained by Housing Mortgage Consultants (William McCaffrey). I then analyze the information for the purpose of the investigation.

8. I have the training, knowledge and experience to perform these searches and understand the meaning of these records and documents with very reliable accuracy.

9. I am available for court appearances, in person or via telephone for further clarification or explanation of the information provided herein, or for cross examination if necessary.

10. Mr. McCaffrey of Housing Mortgage Consultants is also available for court appearances, in person or via telephone, for further clarification or explanation of the information provided herein, or for cross examination if necessary.

11. I have been hired by Andrzej Pabian and Agnieszka Rejmer to investigate and review documents pertaining to the property located at 572 N. White Pine Rd, Buffalo Grove, IL 60089. These documents have been obtained from the Cook County Recorder of Deeds Office and from Circuit Court of Cook County foreclosure court case 11CH 25326. Those documents are as follows:

| Exhibit | Document Name | Date Recorded | Document Number |
|---------|---------------|---------------|-----------------|
| A | Note filed into Circuit Court of Cook County foreclosure court case 11CH 25326 | – Not Recorded – | 197601 |
| B | Note from Closing Documents | – Not Recorded – | Redacted |
| C | Mortgage filed into Cook County records | June 06, 2005 | 0516114262 |
| D | Pages 1-7 of Prospectus Supplement FNMA 2005-73 | – Not Recorded – | |

12. On June 17, 2022, the Andrzej Pabian and Agnieszka Rejmer Loan was identified in the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 ("FNMA 2005-73 Trust") This trust is a Special Purpose Vehicle (SPV) which was created for the purpose of issuing mortgage-backed securities.

13. The returns that are paid on the mortgage-backed securities are derived from "slices" ("tranches") of the pool of comingled payments. "Pooling" (commingling) these trust assets to back financial instruments purportedly serve as the foundation for the instruments (as "securities") being offered and sold to secondary-market investors, in the process known as "securitization."

14. The information contained herein was derived by research through professional services, and by reviewing the Loan Level Data obtained from the Fannie Mae Pool Talk Online Portal on June 17, 2022, by independent third-party securitization and banking expert, William McCaffrey (Housing Mortgage Consultants Inc.), who specializes in locating Residential Mortgage-Backed Securities, (RMBS), and VA, FHA and GSE loans. Several identifying loan indicators were researched, including the loan number for the Andrzej Pabian and Agnieszka Rejmer Loan

Affidavit of Joseph R. Esquivel, Jr. for – Andrzej Pabian and Agnieszka Rejmer 572 N. White Pine Rd, Buffalo Grove, IL 60089

1     (located on the Note, attached hereto as Exhibit "A").

2   15. Based on the research that I have conducted, the evidence shows, that the Andrzej Pabian and

3     Agnieszka Rejmer Loan is currently in the Guaranteed REMIC Pass-Through Certificates Fannie

4     Mae REMIC Trust 2005-73as shown by the information below, as of June 17, 2022.

5   16. The Loan Level Data information for the Andrzej Pabian and Agnieszka Rejmer loan below was

6     obtained from the Fannie Mae Pool Talk Online Portal by an independent third party who

7     specializes in locating Residential Mortgage-Backed Securities, (RMBS), and VA, FHA and

     GSE loans (Housing Mortgage Consultants), William McCaffrey on June 17, 2022

8

9   **Search Results:** – Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73

10   **Trust Closing date:** July 29, 2005

11

12   1|197601|N|301411|RETAIL     MID AMERICA BANK FSB|PNC BANK NATIONAL ASSOCIATION
| 5.500| 5.500| 6.000| 000263200.00| 000263200.00|360|07/2005| 000|360|06/2035|080|080|01|

13   |649|NO |PURCHASE|SF  |1|PRINCIPAL|IL|60089  |ARM| |NO | 1494.42 |2.750|10.500   | 60 |
|2005-073    |   | |

14   The information below was taken from above, put into a vertical column and the information was

15   cross indexed with the Andrzej Pabian and Agnieszka Rejmer Note and Mortgage as to show the

16   matching indicators information.

17   1

18   |197601 - Corresponding Loan Number on the Note – **Matches Note**

19   |N

20   |301411

21   |RETAIL - Classification of Loan – Retail, Wholesale or Corresponding

     MID AMERICA BANK FSB - Seller of Loan to Federal National Mortgage Association (Fannie Mae)

22   – **Matches Lender on Note**

23   |PNC BANK NATIONAL ASSOCIATION - Servicer

24   | 5.500 - the actual interest rate that the loan was purchased at

25   | 5.500 - Original Interest Rate – **Matches Note**

26   | 6.000 - Triad Coupon Rate

     | 000263200.00 - Original loan amount – **Matches Note**

27   | 000263200.00 - Premium Price sold to Federal National Mortgage Association

28                          3

|360 - Length of Loan in months – **Matches Note**

|07/2005 – Date of First Payment for loan – **Matches Note**

| 000

|360

|06/2035 – Date of Maturity – **Matches Note**

|080 - LTV

|080 - LCTV

|01 - No Prepay

|

|649 – FICO Score at time of signing

|NO - Refinance

|PURCHASE - (Type of Loan) vs Refinance

|SF - Single Family Residence

|1 - 1 would be Primary or (2 would be 2nd home and 3 would be investor

|PRINCIPAL - Primary home no second home or investor

|IL – State Abbreviation – **Matches Note**

|60089 – Property Zip Code – **Matches Note**

|ARM - Type of Loan Fixed or Adjustable Rate

|

|NO

| 1494.42 – Monthly Payment – **Matches Note**

|2.750 – Floor Rate – **Matches Note**

|10.500 – Max Interest Rate – **Matches Note**

| 60

|

|2005-073 – Trust Series where loan is located

|

|

|

17. "Loan Level Data" refers to specific loan characteristics of the loan. Examples of different types of specific data types would be "Loan number," "Original Balance," "Maturity Date," "Property State," "Property Zip Code," "Property City," "Pool Number," and many more. Depending on the information that was available when the information was inputted and entered into the data

4

Affidavit of Joseph R. Esquivel, Jr. for – Andrzej Pabian and Agnieszka Rejmer 572 N. White Pine Rd, Buffalo Grove, IL 60089

1   platform, some loans would have more data available, and others would have less.

2   18. Securitization is the process of "aggregating" (i.e., commingling) the payments from a large
3       number of mortgage loans into what is called a "mortgage pool" and then selling "shares" (called
4       "certificates") to investors, who then receive "returns" over a specific time period. The "pool"
5       of commingled mortgage payments is "sliced" into "tranches" from which many different
        "classes" of investments (with varying rates of "returns") are created, and subsequently offered
6       for sale by way of a "prospectus." Based on this information, Andrzej Pabian and Agnieszka
7       Rejmer's mortgage payments ultimately flowed to and/or through the "pool" created by or on
8       behalf of the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73
9       Trust. However, in my opinion, it is impossible to determine the exact amounts from any
10      mortgage payment paid out to any specific investor, as this was done *after* Andrzej Pabian and
11      Agnieszka Rejmer's payments were commingled with other monies.

12  19. The indicators pertaining to the Andrzej Pabian and Agnieszka Rejmer loan show that the loan
13      was securitized; and that Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC
14      Trust 2005-73 paid value for the Andrzej Pabian and Agnieszka Rejmer debt which was the right
15      to collect future payments for the Andrzej Pabian and Agnieszka Rejmer mortgage loan which
16      purportedly translates to the right to collect future payments for the Andrzej Pabian and
        Agnieszka Rejmer loan.

17

18  20. Residential mortgage-backed securities, or RMBS, are bonds or notes created by securitization
19      that are backed by residential mortgages or residential real estate loans. RMBS originators are
20      typically financial institutions that originate residential real estate or residential mortgage loans,
        including banks, building societies/savings & loans and mortgage finance companies. However,
21      issuers could also include government-guaranteed securities issued following bank bailouts, such
22      as TARP or TALF, and the Government Sponsored Enterprises Fannie Mae and Freddie Mac.

23  21. To create residential mortgage-backed securities, or RMBS, institutions sell pools of their loans
24      to a special-purpose vehicle, or SPV, which then sells the loans to a trust. The trust then
25      repackages the loans as interest-bearing securities and issues them. This true sale of the loans to
26      the SPV ensures that the RMBS is treated as bankruptcy-remote from the originator.

27  22. These trust entities are REMIC'S in which the IRS describes a (Real Estate Mortgage Investment
28

5

Conduit) REMIC as an entity formed for the purpose of holding a fixed pool of mortgages secured by interests in real property (IRS Publication 550, Investment Income and Expenses, 2015)

23. Without these transactions going thru the proper parties, valid transactions can not take place and that would leave the trust without having properly secured assets for the certificate holders.

24. Failure of naming the trust on the endorsement is a failure of transferring the instrument to the Trust.

25. I have examined the most current copy of the Andrzej Pabian and Agnieszka Rejmer Promissory Note (which was obtained by the borrower from Circuit Court of Cook County foreclosure court case 11CH 25326; the Andrzej Pabian and Agnieszka Rejmer Mortgage and the public records pertaining to the Andrzej Pabian and Agnieszka Rejmer Mortgage, and have found that Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 Trust is not named in any manner on any of the instruments (see attached Exhibits "A" through "C")

26. I have examined a purported to be true and correct copy of a Promissory Note of Andrzej Pabian and Agnieszka Rejmer dated May 31, 2005, regarding a loan for $263,200.00. (which was obtained by the borrower from Circuit Court of Cook County foreclosure court case 11CH 25326) The Original Lender of the May 31, 2005 Pabian/Rejmer loan is Mid America Bank, FSB. (See Exhibit "A" attached within)

    a. This copy of the Andrzej Pabian and Agnieszka Rejmer Note has an incomplete stamping on the Note itself from PNC Bank, National Association S/B/M Mid America Bank, FSB, signed by Joshua D Bush as Document Custody Specialist, made payable to an as of yet unnamed payee.

    b. Midwest Bank did not merge with PNC Bank, National Association until November 06, 2009, and could not have had Joshua D. Bush sign as Document Custody Specialist until after November 06, 2009.

    c. Attached is a link showing Mid America Bank FSB bank history details https://www.usbanklocations.com/midamerica-bank-fsb-28671.shtml

27. The Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 are not named in any way on the Andrzej Pabian and Agnieszka Rejmer Note.

6

Affidavit of Joseph R. Esquivel, Jr. for – Andrzej Pabian and Agnieszka Rejmer 572 N. White Pine Rd, Buffalo Grove, IL 60089

a. The Federal National Mortgage Association as Trustee for the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 not in its Individual Capacity but solely as Trustee for Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 is not named anywhere within the Andrzej Pabian and Agnieszka Rejmer Note.

28. There is no evidence that Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 ever received an ownership interest in the Andrzej Pabian and Agnieszka Rejmer Note.

29. Paragraph 1 of the Andrzej Pabian and Agnieszka Rejmer Note states *"I understand that the Lender may transfer this Note. The Lender or Anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Noteholder."*

30. I have examined a purported to be true and correct copy of a Promissory Note of Andrzej Pabian and Agnieszka Rejmer dated May 31, 2005, regarding a loan for $263,200.00. The Original Lender of the May 31, 2005, Pabian/Rejmer loan is Mid America Bank, FSB. (See Exhibit "B" attached within)

d. This copy of the Andrzej Pabian and Agnieszka Rejmer Note shows no endorsements to the Note attempting to make the Note payable to anyone.

31. The Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 are not named in any way on the Andrzej Pabian and Agnieszka Rejmer Note.

a. The Federal National Mortgage Association as Trustee for the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 not in its Individual Capacity but solely as Trustee for Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 is not named anywhere within the Andrzej Pabian and Agnieszka Rejmer Note.

32. There is no evidence that Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 ever received an ownership interest in the Andrzej Pabian and Agnieszka Rejmer Note.

33. I have examined a Mortgage of Andrzej Pabian and Agnieszka Rejmer dated May 31, 2008 and

7

filed in the Official Records of the Cook County Recorder of Deeds Office on June 10, 20056 as ins# 0516114262. (See Exhibit "C" attached within)

    a. The **Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73** are not named in any way to the Andrzej Pabian and Agnieszka Rejmer Mortgage

    b. The Federal National Mortgage Association as Trustee for the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 not in its Individual Capacity but solely as Trustee for Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 is not named or referenced in any way on the Andrzej Pabian and Agnieszka Rejmer Mortgage

34. I have examined the Cook County Record relating to the Andrzej Pabian and Agnieszka Rejmer Mortgage dated May 31, 2005. The Cook County Record shows no assignments of mortgage have been filed into public record.

35. It is my expert opinion, there was no "true sale" of the Andrzej Pabian and Agnieszka Rejmer Mortgage Loan caused through the Andrzej Pabian and Agnieszka Rejmer either recorded Assignments of Security Deed.

36. Based on my examination of the Andrzej Pabian and Agnieszka Rejmer loan instruments, and all available documents recorded in the Cook County records associated therewith, there is no evidence or indication that Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 ever acquired ownership rights to the Andrzej Pabian and Agnieszka Rejmer loan, note, Mortgage, the debt purportedly 'evidenced' thereby, and/or the real property purportedly 'secured' thereby.

37. Based on my examination, as Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73 has never acquired rights to the Andrzej Pabian and Agnieszka Rejmer Note and Mortgage, those rights can not be transferred to another party.

38. In my professional opinion, all the available evidence that I have examined lacks proof, or even a showing, of any proper transfer of the debt obligation (purportedly evidenced by the note) along with proper transfer of collateral rights in the real property (purportedly evidenced by the Mortgage) regardless of any verbiage inserted into the various assignments. In fact, there is no

8

1    evidence that suggests the Andrzej Pabian and Agnieszka Rejmer note was properly transferred

2    simultaneously with any purported transfer of the beneficial rights in the Andrzej Pabian and

3    Agnieszka Rejmer Mortgage.

4  39. The transfer and sale of all Beneficial Interest of the Andrzej Pabian and Agnieszka Rejmer

5    Mortgage to Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2005-73

     should have been done on or before the Closing Date of the Guaranteed REMIC Pass-Through

6    Certificates Fannie Mae REMIC Trust 2005-73 which was July 29, 2005. (See Exhibit "D"

7    attached within)

8

9    The above statements are affirmed by me under penalty of perjury under the laws of the State of

     Texas to be true and correct to the best of my knowledge and belief, are based on my own

10   personal knowledge, and I am competent to make these statements.

11               FURTHER THE AFFIANT SAYETH NAUGHT

12

13             By; _Joseph R Esquivel Jr_

14

15             Joseph R Esquivel, Jr.
                Private Investigator License # A20449

16            Mortgage Compliance Investigations LLC

    STATE OF TEXAS      )

17                    )
    COUNTY OF TRAVIS   )

18

19  Subscribed and sworn before me, _Lori M. Esquivel_ , Notary Public, on this

20  __12th__ day of _November_, 2022 by Joseph R Esquivel, Jr proved to me on the

21  basis of satisfactory evidence to be the person(s) who appeared before me.

22

23               WITNESS my hand and official seal.

24    **LORI M. ESQUIVEL**
      My Notary ID # 130167889     _Lori M. Esquivel_

25    Expires March 25, 2023     Notary Public

26

27

28

                             9

Affidavit of Joseph R. Esquivel, Jr. for – Andrzej Pabian and Agnieszka Rejmer 572 N. White Pine Rd, Buffalo Grove, IL 60089

# Exhibit F

0005781748

| Form **1040** | Department of the Treasury — Internal Revenue Service | **U.S. Individual Income Tax Return** | **2009** | | (99) | IRS Use Only — Do not write or staple in this space. |
|---|---|---|---|---|---|---|

For the year Jan 1 - Dec 31, 2009, or other tax year beginning _____ , 2009, ending _____ , 20 ____       OMB No. 1545-0074

**Label** (See instructions.)

Your first name: **ANDRZEJ**  MI  Last name: **PABIAN**

Your social security number: **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**

If a joint return, spouse's first name  MI  Last name

Spouse's social security number

**Use the IRS label. Otherwise, please print or type.**

Home address (number and street). If you have a P.O. box, see instructions.  Apartment no.

**572 WHITE PINE RD**

City, town or post office. If you have a foreign address, see instructions.  State  ZIP code

**BUFFALO GROVE**   **IL**  **60089**

**You must enter your social security number(s) above.** ▲

Checking a box below will not change your tax or refund.

**Presidential Election Campaign** ► Check here if you, or your spouse if filing jointly, want $3 to go to this fund? (see instructions) ........ ►  ☐ You  ☐ Spouse

**Filing Status**
Check only one box.

1  ☐ Single
2  ☐ Married filing jointly (even if only one had income)
3  ☐ Married filing separately. Enter spouse's SSN above & full name here . ►
4  ☒ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here. ►
5  ☐ Qualifying widow(er) with dependent child (see instructions)

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, do **not** check box 6a........
b ☐ Spouse ....................................................

Boxes checked on 6a and 6b . | 1

| c Dependents: | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✔ if qualifying child for child tax credit (see instrs) |
|---|---|---|---|
| (1) First name    Last name | | | |
| KAROLINA PABIAN | 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 | Daughter | ☒ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

No. of children on 6c who:
● lived with you . . . . . | 1
● did not live with you due to divorce or separation (see instrs) . . .
Dependents on 6c not entered above .

**If more than four dependents, see instructions and check here** ► ☐

d Total number of exemptions claimed ............................................. ►  Add numbers on lines above ..... | 2

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 ........................................ | 7 | |
| 8a | Taxable interest. Attach Schedule B if required ....................................... | 8a | |
| | b Tax-exempt interest. **Do not** include on line 8a............ | 8b | | |
| 9a | Ordinary dividends. Attach Schedule B if required ..................................... | 9a | |
| | b Qualified dividends (see instrs) ................................. | 9b | | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see instructions) ............. | 10 | |
| 11 | Alimony received .................................................................. | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ.................................. | 12 | 21,184. |
| 13 | Capital gain or (loss). Att Sch D if reqd. If not reqd, ck here.......................... ► ☐ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 ........................................... | 14 | |
| 15a | IRA distributions ...... 15a | | b Taxable amount (see instrs)... | 15b | |
| 16a | Pensions and annuities ...... 16a | | b Taxable amount (see instrs)... | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E... | 17 | |
| 18 | Farm income or (loss). Attach Schedule F.............................................. | 18 | |
| 19 | Unemployment compensation in excess of $2,400 per recipient (see instructions) ......... | 19 | |
| 20a | Social security benefits ........... 20a | | b Taxable amount (see instrs)... | 20b | |
| 21 | Other income ...................................................................... | 21 | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your **total income** ► | 22 | 21,184. |

**Adjusted Gross Income**

| 23 | Educator expenses (see instructions)...................... | 23 | | | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ ................... | 24 | | | |
| 25 | Health savings account deduction. Attach Form 8889........ | 25 | | | |
| 26 | Moving expenses. Attach Form 3903 ...................... | 26 | | | |
| 27 | One-half of self-employment tax. Attach Schedule SE ...... | 27 | 1,497. | | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans .......... | 28 | | | |
| 29 | Self-employed health insurance deduction (see instructions) ......... | 29 | | | |
| 30 | Penalty on early withdrawal of savings ...................... | 30 | | | |
| 31a | Alimony paid  b Recipient's SSN .... ► | 31a | | | |
| 32 | IRA deduction (see instructions) .......................... | 32 | | | |
| 33 | Student loan interest deduction (see instructions) .......... | 33 | | | |
| 34 | Tuition and fees deduction. Attach Form 8917............. | 34 | | | |
| 35 | Domestic production activities deduction. Attach Form 8903............. | 35 | | | |
| 36 | Add lines 23 - 31a and 32 - 35 .......................................................... | 36 | 1,497. |
| 37 | Subtract line 36 from line 22. This is your **adjusted gross income**................. ► | 37 | 19,687. |

**BAA For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see instructions.**   FDIA0112 09/17/09   Form **1040** (2009)

0005781748

| Form 1040 (2009) | ANDRZEJ PABIAN | | 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 | Page 2 |
|---|---|---|---|---|

**Tax and Credits**

**Standard Deduction for —**
- **People who check any box on line 39a, 39b, or 40b or who can be claimed as a dependent, see instructions.**
- **All others:**

Single or Married filing separately, $5,700

Married filing jointly or Qualifying widow(er), $11,400

Head of household, $8,350

| | | | |
|---|---|---|---|
| 38 | Amount from line 37 (adjusted gross income) | 38 | 19,687. |
| 39a | Check if: ☐ You were born before January 2, 1945, ☐ Blind. ☐ Spouse was born before January 2, 1945, ☐ Blind. **Total boxes checked ▶** 39a | | |
| b | If your spouse itemizes on a separate return, or you were a dual-status alien, see instrs and ck here ▶ 39b ☐ | | |
| 40a | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | 40a | 9,947. |
| b | If you are increasing your standard deduction by certain real estate taxes, new motor vehicle taxes, or a net disaster loss, attach Schedule L and check here (see instructions) ▶ 40b ☐ | | |
| 41 | Subtract line 40a from line 38 | 41 | 9,740. |
| 42 | Exemptions. If line 38 is $125,100 or less and you did not provide housing to a Midwestern displaced individual, multiply $3,650 by the number on line 6d. Otherwise, see instructions | 42 | 7,300. |
| 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | 43 | 2,440. |
| 44 | Tax (see instrs). Check if any tax is from: a ☐ Form(s) 8814 b ☐ Form 4972 | 44 | 244. |
| 45 | Alternative minimum tax (see instructions). Attach Form 6251 | 45 | 0. |
| 46 | Add lines 44 and 45 ▶ | 46 | 244. |
| 47 | Foreign tax credit. Attach Form 1116 if required | 47 | | |
| 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | | |
| 49 | Education credits from Form 8863, line 29 | 49 | | |
| 50 | Retirement savings contributions credit. Attach Form 8880 | 50 | | |
| 51 | Child tax credit (see instructions) | 51 | 244. | |
| 52 | Credits from Form: a ☐ 8396 b ☐ 8839 c ☐ 5695 | 52 | | |
| 53 | Other crs from Form: a ☐ 3800 b ☐ 8801 c ☐ | 53 | | |
| 54 | Add lines 47 through 53. These are your **total credits** | 54 | 244. |
| 55 | Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- ▶ | 55 | 0. |

**Other Taxes**

| | | | |
|---|---|---|---|
| 56 | Self-employment tax. Attach Schedule SE | 56 | 2,993. |
| 57 | Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 | 57 | |
| 58 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | 58 | |
| 59 | Additional taxes: a ☐ AEIC payments b ☐ Household employment taxes. Attach Schedule H | 59 | |
| 60 | Add lines 55-59. This is your **total tax** ▶ | 60 | 2,993. |

**Payments**

**If you have a qualifying child, attach Schedule EIC.**

| | | | |
|---|---|---|---|
| 61 | Federal income tax withheld from Forms W-2 and 1099 | 61 | |
| 62 | 2009 estimated tax payments and amount applied from 2008 return | 62 | |
| 63 | Making work pay and government retiree credit. Attach Schedule M | 63 | 400. |
| 64a | Earned income credit (EIC) | 64a | 2,523. |
| b | Nontaxable combat pay election ▶ 64b | | |
| 65 | Additional child tax credit. Attach Form 8812 | 65 | 756. |
| 66 | Refundable education credit from Form 8863, line 16 | 66 | |
| 67 | First-time homebuyer credit. Attach Form 5405 | 67 | |
| 68 | Amount paid with request for extension to file (see instructions) | 68 | |
| 69 | Excess social security and tier 1 RRTA tax withheld (see instructions) | 69 | |
| 70 | Credits from Form: a ☐ 2439 b ☐ 4136 c ☐ 8801 d ☐ 8885 | 70 | |
| 71 | Add lns 61-63, 64a, & 65-70. These are your **total pmts** ▶ | 71 | 3,679. |

**Refund**

Direct deposit? See instructions and fill in 73b, 73c, and 73d or Form 8888.

| | | | |
|---|---|---|---|
| 72 | If line 71 is more than line 60, subtract line 60 from line 71. This is the amount you overpaid | 72 | 686. |
| 73a | Amount of line 72 you want **refunded to you.** If Form 8888 is attached, check here ▶ ☐ | 73a | 686. |
| b | Routing number 071921891 ▶ c Type: ☒ Checking ☐ Savings | | |
| d | Account number 601782306 | | |
| 74 | Amount of line 72 you want applied to your 2010 estimated tax ▶ 74 | | |

**Amount You Owe**

| | | | |
|---|---|---|---|
| 75 | Amount you owe. Subtract line 71 from line 60. For details on how to pay, see instructions ▶ | 75 | |
| 76 | Estimated tax penalty (see instructions) 76 | | |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS (see instructions)? ☐ **Yes. Complete the following.** ☒ **No**

Designee's name ▶ _____ Phone no. ▶ _____ Personal identification number (PIN) ▶ _____

**Sign Here**

Joint return? See instructions.

Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature ▶ _____ Date _____ Your occupation DRIVER Daytime phone number _____

Spouse's signature. If a joint return, both must sign. ▶ _____ Date _____ Spouse's occupation _____

**Paid Preparer's Use Only**

| | | | |
|---|---|---|---|
| Preparer's signature ▶ | MALGORZATA EWA ZAWADA | Date _____ Check if self-employed ☐ | Preparer's SSN or PTIN P00507232 |
| Firm's name (or yours if self-employed), address, and ZIP code | Biz Inc. 3357 N Harlem Ave Chicago IL 60634 | | EIN 20-0248959 Phone no. _____ |

Form **1040** (2009)



PNC Mortgage
a Division of PNC Bank NA
3232 Newmark Drive
Miamisburg, Ohio 45342

PNC Loan Number:        5781748
Investor Loan Number:   5781748

**Borrower's Copy**

Dear Borrower:

The modification of your loan has been approved.  To successfully complete this transaction, you must follow these instructions very carefully.  **Be advised, until such time PNC Mortgage, a Division of PNC Bank NA has fully executed documents and all required money, we will proceed with any and all of our rights and remedies as provided by the loan papers.**

On all pages where a signature is required, please sign your name exactly how it is typed below. The county will not record the modification unless it is signed this way.

1)  Using **black ink only,**  ANDRZEJ PABIAN
            and              AGNIESZKA REJMER

    must sign all three (3) copies of the Loan Modification in the presence of an official notary, who will witness each signature.

2)  Exhibit #1 gives you the terms of the Loan Modification.

3)  Sign and notarize all three (3) copies of the Loan Modification Agreement.  Return two (2) originals in the large envelope.  These documents must be returned to our office by November 6, 2010.   IF NOT, THIS LOAN MODIFICATION MAY BE NULL AND VOID.

4)  Retain one (1) copy of all documents for your personal records.
    Your first modified monthly payments is due in the amount of       $2,279.72
    In addition, a processing fee of                                   $0.00
    modification closing costs of                                      $360.00
    and a cash contribution in the amount of                           $0.00
    Less funds received by PNC and placed into suspense                $0.00

5)  Please enclose certified funds (**CASHIER CHECK OR**
    **MONEY ORDERS**) in the amount of                                 $2,639.72
    along with the two signed documents.

If you have any questions regarding the modification, please call me at 1 412-061-1271 ext. #  937-910-4665
To facilitate the timely return of these documents, PNC may engage with a third party vendor.
Sincerely,

CONNIE PARKER
PNC Mortgage
a Division of PNC Bank NA
Homeowners Assistance Department

## Exhibit #1

| | |
|---|---|
| Investor Loan # | 5781748 |
| PNC Loan # | 5781748 |
| Due Date of Last Paid Installment (DDLPI) | 02/01/2009 |
| | |
| Interest rate of existing Mortgage | 5.5000% |
| New modified interest rate | 5.5000% |
| New modified loan term (months) | 296. |
| Servicer fee (bps) | 0.25000% |
| | |
| Effective date of Modification | 10/01/2010 |
| Due date of first modified payment | 11/01/2010 |
| | |
| Maturity date of existing Mortgage | 06/01/2035 |
| New maturity date of modified mortgage | 06/01/2035 |
| Existing unpaid principal balance | $249,191.00 |
| | |
| Additions to principal balance: | |
| Accrued interest to effective date (Estimate) | $21,108.78 |
| Escrow advance/due | $6,893.46 |
| Amount to fully refund escrow (Estimate) | $4,508.05 |
| Legal fees and costs (Estimate) | $176.82 |
| Other fees and costs | $0.00 |
| Modification Processing fee if capitalized: | $0.00 |
| | |
| Subtractions from Capitalization Amount: | |
| Less Borrower's Contribution to Reduce Interest Capitalized | $0.00 |
| Less Borrower's Contribution to Reduce Legal Fees and Cost | $0.00 |
| Less Third Party Contribution | $0.00 |
| | |
| Total capitalization amount | $32,687.11 |
| | |
| New Modified unpaid principal balance amortized (Estimate) | $281,878.11 |
| | |
| New modified payment of principal and interest (Estimate) | $1,741.91 |
| New modified monthly escrow payment for taxes and insurance (Estimate) | $537.81 |
| TOTAL new modified monthly payment (Estimate) | $2,279.72 |
| | |
| Amounts due from borrower for modification (by certified or cashier's check) | |
| Total cash contribution to reduce modified principal balance * | $0.00 |
| Closing costs for modification (title, documents, closing) (Estimate) ** | $360.00 |
| Processing fee for review of modification request | $0.00 |
| Borrower's first modified monthly payment (Estimate) | $2,279.72 |
| Less funds received by PNC and placed into suspense | $0.00 |
| TOTAL CASH DUE FROM BORROWER | $2,639.72 |

YOUR SECOND MODIFIED PAYMENT WILL BE DUE ON FIRST OF          December 1, 2010
If you have not received new payment coupons send your payments to my attention.


* Total cash contribution will be applied to reduce the total amount due on the
mortgage, and·
this amount must be paid in full regardless of whether actual amounts are higher or lower than
estimated amounts.  ** The amount shown for closing costs is the minimum amount due. If the
final closing costs are less than the estimate, then the excess amount will be applied to reduce
the total amount due on the mortgage. If the final closing costs are more than the estimate, the
borrower is responsible for these amounts and they must be collected when the modification
documents are signed and final cash amounts are due.

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

Creditor: **PNC MORTGAGE, A DIVISION OF PNC BANK, NA**
**3232 NEWMARK DRIVE**
**MIAMISBURG, OHIO 45342**

Loan Number: **0005781748**

Date: **OCTOBER 1, 2010**

Borrower(s) Name(s): **ANDRZEJ PABIAN AND AGNIESZKA REJMER**

Mailing Address: **572 N WHITE PINE RD, BUFFALO GROVE, ILLINOIS 60089**
Property Address: **572 N WHITE PINE RD, BUFFALO GROVE, ILLINOIS 60089**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total Payments The amount you have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 5.500 % | S 233,727.35 | S 281,878.11 | S 515,605.46 |

A written Itemization of the Amount Financed and/or Good Faith Estimate of Settlement Costs is being or has been furnished with this disclosure.

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|
| | | Monthly Beginning: | | | |
| 295 | S1,741.91 | 11/01/2010 | | | |
| 1 | S1,742.01 | 06/01/2035 | | | |

☐ Demand Feature: This obligation has a demand feature.

☐ Variable Rate Feature: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

Insurance: You may obtain property insurance from anyone you want that is acceptable to Creditor.

Security: You are giving a security interest in the property being purchased or refinanced.

**Filing or Recording Fees: $** 360.00

Late Charge: If a payment is more than 15 days late, you will be charged 5.000 % of the payment.

Prepayment: If you pay off early, you ☐ may ☒ will not have to pay a penalty.
☐ may ☒ will not be entitled to a refund of part of the finance charge.

Assumption: Someone buying your property ☐ may ☒ may, subject to conditions ☐ may not assume the remainder of your loan on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties. All numerical disclosures except the late payment disclosure are estimates.

You are not required to complete this agreement merely because you have received these disclosures or signed a loan application.

NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

X
**ANDRZEJ PABIAN**     Date

X
**AGNIESZKA REJMER**     Date

_____ Date     _____ Date

_____ Date     _____ Date

# Exhibit G

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT—CHANCERY DIVISION



PNC BANK, NATIONAL ASSOCIATION,

        Plaintiff,

vs.

ANDRZEJ PABIAN; AGNIESZKA
REJMER; PNC
BANK, NATIONAL ASSOCIATION S/I/I
TO
NATIONAL CITY BANK; UNKNOWN
OWNERS AND
NON RECORD CLAIMANTS ;
        Defendant.

NO. 11 CH 23526

572 NORTH WHITE PINE
ROAD
BUFFALO GROVE, IL 60089

JUDGE
Judge Anna M. Loftus

## LOSS MITIGATION AFFIDAVIT [PNC MORTGAGE]

I, **BRITTANY SLONEKER**, hereby state as follows:

1.    I am employed as **BRITTANY SLONEKER** of PNC Bank, National Association, the mortgagee as defined in section 15-1208 of the Illinois Mortgage Foreclosure Law for the mortgage loan which is secured by the **AUTHORIZED SIGNER** recorded as document number **MORTGAGE** that is the subject of the pending foreclosure case ("Subject Mortgage Loan"), and I am authorized to act on behalf of plaintiff.

2.    With respect to the Subject Mortgage Loan, my employer is the appropriate entity to extend loss mitigation, if any, to the mortgagor(s), as defined in Section 15-1209 of the Illinois Mortgage Foreclosure Law (hereinafter, "Mortgagor(s)").

3.    I have performed or caused to be performed a review of the records maintained in the ordinary course of the business of my employer relating to the Subject Mortgage Loan, and based upon that review:

(a) The Subject Mortgage Loan is eligible for the following loss mitigation programs[1]:

Collections Repayment Plan
HAMP Modification
Core Repayment Plan 1-12 Months
Core Modification
Core Repayment Plan 13-24 Months
Core Forbearance
Liquidation Option (Short Sale or DIL)

(b) For each of the programs listed above in 3(a), the following steps have been taken by

PNC Bank, National Association, to comply with its obligations under such program:

**Illinois Grace Period Notice:**
July 30, 2009
May 16, 18, 2011

**Breach Letter:**
April 24, 2009
May 16, 18, 2011

**Loss Mitigation Acknowledgment (CR698):**
June 25, 2012
November 7, 2013

**Workout Referral Package (XC922):**
December 14, 2012

**Workout Closed Letter (LM280):**
June 20, 2013
March 3, 2015
April 6, 2015

**HAFA Proactive Solicitation (CA451):**
June 11, 2012

**SPOC Notification (LM282):**
May 13, 2014

**Request for Contact Letter Sent to Borrower (XC401):**
January 30, 2014

---

[1] Illinois Supreme Court Rule 114 states "'Eligible' means the loan is eligible to be considered under such programs because it meets the threshold requirements; eligible does not mean that a loss mitigation alternative to foreclosure is guaranteed."

February 1, 6, 2014
May 23, 2014
July 30, 2014
September 8, 23, 2014
October 13, 29, 2014
November 11, 2014

**Phone Contact Made with Borrower:**
June 22, 2011
July 13, 2011
September 7, 26, 2011
December 20, 2011
January 11, 2012
April 2, 2012
May 8, 17, 2012
September 25, 2012
January 18, 25, 2013
April 3, 16, 2013
May 1, 20, 22, 2013
June 12, 27, 2013
July 26, 2013
November 5, 15, 2013
December 6, 9, 2013
March 13, 18, 2014
April 24, 2014
May 9, 2014
June 27, 2014
December 17, 23, 2014

**Loss Mitigation Review:**
Started Loss Mitigation June 25, 2012
Remove from Loss Mitigation/ Fail HAMP December 14, 2012
Started Loss Mitigation December 14, 2012
Remove from Loss Mitigation/ Declined workout June 20, 2013
Started Loss Mitigation October 4, 2013
Remove from Loss Mitigation/ Complete HAMP package not received January 8, 2014
Started Loss Mitigation February 6, 2014
Remove from Loss Mitigation/ Complete HAMP package not received March 17, 2014
Started Loss Mitigation March 20, 2014
Remove from Loss Mitigation/ Complete HAMP package not received April 23, 2014
Started Loss Mitigation October 16, 2014
Remove from Loss Mitigation/ Set up in error October 16, 2014
Started Loss Mitigation November 20, 2014
Remove from Loss mitigation/ Signed agreement not received March 3, 2015
Started Loss Mitigation March 13, 2015
Remove from Loss mitigation/ Signed agreement not received April 6, 2015

(c) For each of the programs listed above in 3(a), the current status of loss mitigation effort

is as follows:

**Collections Repayment Plan**
Mortgagor(s) failed to respond to PNC's solicitations as described in 3(b) above.

**HAMP Modification**
Mortgagor(s) failed to respond to PNC's solicitations as described in 3(b) above.

**Core Repayment Plan 1-12 Months**
Mortgagor(s) failed to respond to PNC's solicitations as described in 3(b) above.

**Core Modification**
Mortgagor(s) failed to respond to PNC's solicitations as described in 3(b) above.

**Core Repayment Plan 13-24 Months**
Mortgagor(s) failed to respond to PNC's solicitations as described in 3(b) above.

**Core Forbearance**
Mortgagor(s) failed to respond to PNC's solicitations as described in 3(b) above.

**Liquidation Option (Short Sale or DIL)**
Mortgagor(s) failed to respond to PNC's solicitations as described in 3(b) above.

Mortgagor(s) are not in compliance with any ongoing loss mitigation plan as of the date

this Affidavit is being signed.

4.      PNC Bank, National Association, caused a Notice of Acceleration to be sent to

Defendants at **572 N WHITE PINE RD, BUFFALO GROVE, IL 60089**, on **APRIL 24, 2009**,

by U.S. mail in a properly addressed envelope with postage prepaid, in accordance with PNC Bank,

National Association's regular and ordinary business practices.

5.      A true and correct copy of the Notice of Acceleration that was sent to Defendants

is attached hereto. The Notice of Acceleration is a record that is generated and maintained by PNC

Bank, National Association in the regular and ordinary course of business.

6.      PNC Bank, National Association, caused a Notice of Acceleration to be sent to Defendants at **572 N WHITE PINE RD, BUFFALO GROVE, IL 60089,** on **MAY 16, 2011,** by U.S. mail in a properly addressed envelope with postage prepaid, in accordance with PNC Bank, National Association's regular and ordinary business practices.

7.      A true and correct copy of the Notice of Acceleration that was sent to Defendants is attached hereto. The Notice of Acceleration is a record that is generated and maintained by PNC Bank, National Association in the regular and ordinary course of business.

8.      PNC Bank, National Association, caused a Notice of Acceleration to be sent to Defendants at **572 N WHITE PINE RD, BUFFALO GROVE, IL 60089,** on **MAY 18, 2011,** by U.S. mail in a properly addressed envelope with postage prepaid, in accordance with PNC Bank, National Association's regular and ordinary business practices.

9.      A true and correct copy of the Notice of Acceleration that was sent to Defendants is attached hereto. The Notice of Acceleration is a record that is generated and maintained by PNC Bank, National Association in the regular and ordinary course of business.

10.     PNC Bank, National Association sent a Grace Period Notice to Defendants at **572 N WHITE PINE RD, BUFFALO GROVE, IL 60089,** on **JULY 30, 2009,** by U.S. mail in a properly addressed envelope with postage prepaid, in accordance with PNC Bank, National Association's regular and ordinary business practices.

11.     A true and correct copy of the Grace Period Notice that was sent to Defendants is attached hereto. The Grace Period Notice is a record that is generated and maintained by PNC Bank, National Association in the regular and ordinary course of business.

12.     PNC Bank, National Association sent a Grace Period Notice to Defendants at **572 N WHITE PINE RD, BUFFALO GROVE, IL 60089,** on **MAY 16, 2011,** by U.S. mail in a

properly addressed envelope with postage prepaid, in accordance with PNC Bank, National Association's regular and ordinary business practices.

13. A true and correct copy of the Grace Period Notice that was sent to Defendants is attached hereto. The Grace Period Notice is a record that is generated and maintained by PNC Bank, National Association in the regular and ordinary course of business.

14. PNC Bank, National Association sent a Grace Period Notice to Defendants at **572 N WHITE PINE RD, BUFFALO GROVE, IL 60089**, on **MAY 18, 2011,** by U.S. mail in a properly addressed envelope with postage prepaid, in accordance with PNC Bank, National Association's regular and ordinary business practices.

15. A true and correct copy of the Grace Period Notice that was sent to Defendants is attached hereto. The Grace Period Notice is a record that is generated and maintained by PNC Bank, National Association in the regular and ordinary course of business.

16.    The above is true and accurate to the best of my personal knowledge and based upon my review of the records as set forth above.

AFFIANT STATES NOTHING MORE.

By: _Brittany Sloneker_      Dated: April 21, 2015
       Affiant    **Authorized Signer**

Sworn to before me and subscribed in my presence this _21st_ day of _April_ , 20 _15_ .

My commission expires,
_April 5th_ 20 _17_ .

SEAL

_Janice Grill_
Notary Public
State of Ohio
Personally Known _X_ OR Produced Identification _____
Type of Identification Produced: _____

# HP LaserJet M1536dnf MFP

# Fax Confirmation

G 1

HP Fax

May-19-2013   2:49AM

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 1511 | 5/19/2013 | 2:35:23AM | Send | 18552883974 | 13:52 | 22 | OK |

LOAN MODIFICATION DEPT

TO: LOSS MITIGATION   From: ANDRZEJ FABIAN

Fax: 855-288-3974   Pages: 22

Phone:

Date: 05-18-13

Re: 512 white pine   Date# 0005781740

(Urgent  (For Review  (Please Comment  (Please Reply

Doquested documents attached

✓ BANK STATEMENTS
   FOR  MARCH, APRIL  till May 05 —
       MOST RECENT
✓ 4506T- Sign
   PROFIT AND LOSS
✓ QUARTERLY   AND

PROFIT AND LOSS
✓ YEAR TO DATE
✓ LETTER OF EXPLANATION — NO
   PAYSTUBS.

✓ LETTER OF EXPLANATION NO
   W-2 FORM.

✓ 2012 BUSINESS INCOME TAX RETURN.
   1205 and K-1 Inside



P.O. Box 1820
Dayton, OH 45401-1820

PNC Mortgage
3232 Newmark Drive
Miamisburg, Ohio 45342
Telephone: (937) 910-1200

**Mailing Address:**
P.O. Box 1820
Dayton, Ohio 45401-1820

JUNE 20, 2013

88007 000262
Andrzej Pabian
Agnieszka Rejmer
572 White Pine Rd
Buffalo Grove IL 60089

RE: Loan Number 0005781748

Dear Customer:

The review of your hardship assistance request has been completed.
Unfortunately, as of June 20, 2013, we are unable to approve or
finalize your request for hardship assistance due to the following
reason(s):

Per your request, we have withdrawn your request for assistance.

Please note that the servicing of your loan will continue per the terms
of your Note and Deed of Trust/Mortgage; including foreclosure
proceedings and normal credit bureau reporting. If foreclosure activity
was previously suspended on your loan, it has now resumed.

You may submit a new request for assistance if your situation changes.

LM280



*G 2*

January 08, 2014

Andrzej Pabian
Agnieszka Rejmer
572 White Pine Rd
Buffalo Grove IL 60089

MAKING HOME AFFORDABLE PROGRAM
RE:  Loan No. 0005781748

We have completed our review of your hardship assistance request under
the Making Home Affordable Program (MHAP). However, we cannot approve
or finalize your request for assistance, for the following reason(s):

**Request Incomplete.**  We are unable to offer you a Home Affordable
Modification because you did not provide us with the documents we
requested.  Two notices which listed the specific documents we needed
and the time frames required to provide them have been sent to you.

If you wish to supply valid supporting documentation, in order to
dispute this denial, you may submit a request along with your full name
and full property address via email to MHA_Inquiry@pncmortgage.com or
you may submit a request in writing to PNC Mortgage/MHA, B6-YM08-01-9,
3232 Newmark Dr, Miamisburg, OH  45342. You may not dispute the NPV
inputs, because failure of the NPV evaluation is not the reason
for program non-approval.  If the NPV was calculated during the review,
you will receive written confirmation of the inputs and values under
separate cover.

There may be other options available.  Enclosed is information concerning
a Workout Package for your review.

Please note that normal servicing of your referenced loan will continue,
including collection and foreclosure proceedings, as well as negative
credit bureau reporting, if applicable.  If these proceedings were
previously suspended, they will begin once more.

Our goal is to help you make informed decisions regarding your home
loan, and we are available to support you through this process.  If
you have any questions, please contact your representative
BONNIE H at 1-888-224-4702 at ext. 937-072-0865.

CR874



A Division of PNC Bank, National Association

Customer Service Contact Information:
PNC Mortgage, B6-YM07-01-7
PO Box 1820
Dayton, OH 45401-1820
1-800-822-5626

March 17, 2014

G 3

Andrzej Pabian
Agnieszka Rejmer
572 White Pine Rd
Buffalo Grove IL 60089

MAKING HOME AFFORDABLE PROGRAM
RE:  Loan No. 0005781748

We have completed our review of your hardship assistance request under
the Making Home Affordable Program (MHAP). However, we cannot approve
or finalize your request for assistance, for the following reason(s):

**Request Incomplete.** We are unable to offer you a Home Affordable
Modification because you did not provide us with the documents we
requested. Two notices which listed the specific documents we needed
and the time frames required to provide them have been sent to you.

If you wish to supply valid supporting documentation, in order to
dispute this denial, you may submit a request along with your full name
and full property address via email to MHA_Inquiry@pncmortgage.com or
you may submit a request in writing to PNC Mortgage/MHA, B6-YM08-01-9,
3232 Newmark Dr, Miamisburg, OH  45342. You may not dispute the NPV
inputs, because failure of the NPV evaluation is not the reason
for program non-approval. If the NPV was calculated during the review,
you will receive written confirmation of the inputs and values under
separate cover.

There may be other options available. Enclosed is information concerning
a Workout Package for your review.

Please note that normal servicing of your referenced loan will continue,
including collection and foreclosure proceedings, as well as negative
credit bureau reporting, if applicable. If these proceedings were
previously suspended, they will begin once more.

Our goal is to help you make informed decisions regarding your home
loan, and we are available to support you through this process. If
you have any questions, please contact your representative
JOHN J at 1-888-224-4702 at ext. 937-072-1951.

CR874



A Division of PNC Bank, National Association

**Customer Service Contact Information:**
PNC Mortgage, B6-YM07-01-7
PO Box 1820
Dayton, OH 45401-1820
1-800-822-5626

March 17, 2014
Page 2

If you need help in understanding this letter, please call the HOPE
Hotline at 1-888-995-HOPE and ask for MHA help. HUD-Approved Housing
Counselors are available to assist you, at no charge.

Sincerely,

PNC Mortgage                                          CR874 TME

Enclosure

This is an attempt to collect a debt. Any information obtained will
be used for that purpose. However, if you have received a discharge
in bankruptcy affecting our right to collect your loan as a personal
obligation, and if the loan was not reaffirmed in the bankruptcy case,
PNC Mortgage, a division of PNC Bank, National Association will only
exercise its rights against the property itself, and is not attempting
to collect the discharged debt from you personally.



PNC
MORTGAGE℠

A Division of PNC Bank, National Association

Customer Service Contact Information:
PNC Mortgage, B6-YM07-01-7
PO Box 1820
Dayton, OH 45401-1820
1-800-822-5626

April 23, 2014

$G$ 4

Andrzej Pabian
Agnieszka Rejmer
572 White Pine Rd
Buffalo Grove IL 60089

MAKING HOME AFFORDABLE PROGRAM
RE: Loan No. 0005781748

We have completed our review of your hardship assistance request under
the Making Home Affordable Program (MHAP). However, we cannot approve
or finalize your request for assistance, for the following reason(s):

**Request Incomplete.** We are unable to offer you a Home Affordable
Modification because you did not provide us with the documents we
requested. Two notices which listed the specific documents we needed
and the time frames required to provide them have been sent to you.

If you wish to supply valid supporting documentation, in order to
dispute this denial, you may submit a request along with your full name
and full property address via email to MHA_Inquiry@pncmortgage.com or
you may submit a request in writing to PNC Mortgage/MHA, B6-YM08-01-9,
3232 Newmark Dr, Miamisburg, OH 45342. You may not dispute the NPV
inputs, because failure of the NPV evaluation is not the reason
for program non-approval. If the NPV was calculated during the review,
you will receive written confirmation of the inputs and values under
separate cover.

There may be other options available. Enclosed is information concerning
a Workout Package for your review.

Please note that normal servicing of your referenced loan will continue,
including collection and foreclosure proceedings, as well as negative
credit bureau reporting, if applicable. If these proceedings were
previously suspended, they will begin once more.

Our goal is to help you make informed decisions regarding your home
loan, and we are available to support you through this process. If
you have any questions, please contact your representative
JOHN J at 1-888-224-4702 at ext. 937-072-1951.

CR874

Sep. 10. 2015 10:55AM    PNC Bank - MORTGAGE                      No. 2428    P. 1

$ND$0005781748CR87409-09-15

*G-5*

September 09, 2015

Andrzej Pabian
Agnieszka Rejmer
C/o Domenick Legal Group
2526 Monroeville Blvd Ste 102
Monroeville PA 15146

RE:  Loan No. 0005781748
Property Address: 572 N White Pine Rd
                  Buffalo Grove IL 60089
MAKING HOME AFFORDABLE PROGRAM

Dear Customer:

We have completed our review of your hardship assistance request under
the Making Home Affordable Program (MHAP).  However, we are unable to
proceed further with your request for assistance, for the following
reason(s):

- Request Incomplete

We are unable to offer you a Home Affordable Modification because you
did not provide us with the documents we requested. A notice which
listed the specific documents we needed and the time frame required
to provide them was sent to you.

In order to dispute this removal from the MHAP Program, you may submit
a request with your full name and full property address, along with
any valid supporting documentation, via email to
MHA_Inquiry@pncmortgage.com or you may submit a request in writing to
PNC Mortgage/MHA, B6-YM08-01-9,3232 Newmark Dr, Miamisburg, OH 45342.
You may not dispute the net present value (NPV) inputs, because failure
of the NPV evaluation is not the reason for program non-approval. If
the NPV was calculated during the review, you will receive written
confirmation of the inputs and values under separate cover.

Please note that normal servicing of your referenced loan will continue,
including collection and foreclosure activity, as well as negative
credit bureau reporting, if applicable. If any foreclosure activity was
previously suspended, it may now resume.

Our goal is to help you make informed decisions regarding your home
loan, and we are available to support you through this process. If
you have any questions, please contact your representative
SZLENA D at 888-224-4702 at ext. 937-072-2319.

If you need help in understanding this letter, please call the HOPE
Hotline at 888-995-HOPE and ask for MHA help. HUD-Approved Housing
Counselors are available to assist you, at no charge.

Sincerely,

PNC Mortgage                              CR874 AHO

@ND@ 31

# Exhibit H



A Division of PNC Bank, National Association

Loss Mitigation Contact Information:
PNC Mortgage, B6-YM09-02-2
3232 Newmark Drive
Miamisburg, OH 45342-5421
1-888-224-4702

LOAN NUMBER    0005781748
DATE           October 27, 2015
PAGE 1 OF 9

ANDRZEJ PABIAN
AGNIESZKA REJMER
2526 MONROEVILLE BLVD STE 102
MONROEVILLE, PA 15146-0000

**Property Address:**
572 N WHITE PINE RD
BUFFALO GROVE, IL 60089

 Post Modification DTI Outside of Acceptable Range

**Post Modification DTI Outside of Acceptable Range:**

We have completed our review of your hardship assistance request under the Making Home Affordable Program (MHAP). However, we are unable to offer you a Home Affordable Modification Program (HAMP) Modification because, in performing our underwriting of a potential modification, the proposed modified monthly payment was outside of the range of 10% – 55% of your gross monthly income (your income before taxes and other deductions) which we verified as $3,393.95 .

Your modified monthly housing expense must be equal to or greater than 10% and equal to or less than 55% of your gross monthly income in order for you to be eligible for HAMP. The proposed modified monthly payment includes a modified monthly principal and interest payment on your first lien mortgage plus property taxes, hazard insurance premiums and homeowners dues (if any).

The Home Affordable Mortgage Program requires a calculation of the net present value (NPV) of a modification using a formula developed by the Department of Treasury. The NPV calculation requires us to input certain financial information about your income and your loan. When combined with other data in the Treasury NPV model, these inputs estimate the cash flow the investor (owner) of your loan is likely to receive if the loan is modified and the investor's cash flow if the loan is not modified. During the course of our review, a net present value test was performed. Although your request for assistance is not being rejected due to negative NPV results, some of the inputs may have affected the result of the NPV test.

NPV Data Input Fields and Values

### Borrower Information

| Input Data Field | Description | Value |
|---|---|---|
| Current Borrower Credit Score | This field identifies your credit score as provided by one or more of the three national credit reporting agencies. | 646 |
| Current Co-Borrower Credit Score | If a co-borrower is listed on the mortgage, this field identifies the co-borrower's credit score as provided by one or more of the three national credit reporting agencies. | 701 |

continue to next page

LM_NPVFAIL_v03.01

To request information or notify us of an error
regarding your account, please send a written



**PNC MORTGAGE**℠

A Division of PNC Bank, National Association

LOAN NUMBER    0005781748
DATE           October 27, 2015
PAGE 2 OF 9

| Input Data Field | Description | Value |
|---|---|---|
| Monthly Gross Income | This field identifies the monthly gross income of all borrowers on your loan before any payroll deductions or taxes. | $3,393.95 |
| Borrowers Total Monthly Obligations | This field identifies the total monthly debt obligations used to calculate the total debt payment-to-income ratio. | $3,357.70 |
| Principal Residence Total Housing Expense | This field only applies if your application for a HAMP modification is for a property that is not your principal residence.<br><br>This field identifies the amount of the total monthly housing expense (i.e., principal, interest, taxes, insurance and association fees, if any) for your principal residence, and the principal residence(s) of any co-borrower(s). | $0.00 |

## Property Information

| Input Data Field | Description | Value |
|---|---|---|
| Property State | This field identifies the two letter state code of the property securing mortgage for which you are applying for a HAMP modification. | IL |
| Property Zip Code | This field identifies the zip code of the property securing the mortgage for which you are applying for a HAMP modification. | 60089 |
| Property Value | This field identifies the estimated fair market value of the property for which you are applying for a HAMP modification that was used for this analysis. | $268,000.00 |
| Property Valuation Type | This field identifies the method by which the property for which you are applying for a HAMP modification was valued:<br><br>1 – Automated Valuation Model (AVM)<br>2 – Exterior Broker Price Opinion (BPO) / Appraisal (as is value)<br>3 – Interior BPO / Appraisal (as is value) | 2 – Exterior BPO |
| Occupancy | This field uses codes to identify the occupancy of the property for which you are applying for a HAMP modification.<br><br>The servicer for owner-occupied properties use a code of 1, 3 or 4 and for non-owner-occupied properties will use a code of 2. | 3 |
| Number of Units | This field identifies the number of dwelling units for the property securing the mortgage for which you are applying for a HAMP modification. | 1 |
| Mark-to-Market Loan-to-Value | This field identifies the ratio that is based upon the modified interest bearing principal balance of the Mortgage and the current value of the property. | 104.502 % |

continue to next page

LM_NPVFAIL_v03.01

To request information or notify us of an error regarding your account, please send a written request/notice to


**BMO** **Harris Bank**

A part of BMO Financial Group
P.O. Box 4320
Carol Stream, Illinois 60197-4320

BMO HARRIS BANK N.A.          7 1941
P.9. BOX 94099
PALATINE, IL 60094-4099

ACCOUNT NUMBER:          4810614050

024483

01     04202

Statement Period
09/06/15 TO 10/05/15
IH00990029000000000

ANDRZEJ FABIAN
572 WHITE PINE RD
BUFFALO GROVE IL  60089

PAGE     1 OF     3

0000

IMPORTANT ACCOUNT UPDATES:

EFFECTIVE DECEMBER 7, 2015, THE MONTHLY MAINTENANCE FEE ON YOUR BMO HARRIS
EVERYDAY CHECKING ACCOUNT WILL INCREASE FROM $10 TO $12. HOWEVER, THERE ARE
NO CHANGES TO THE WAYS YOU CAN WAIVE THE FEE, INCLUDING RECEIVING MONTHLY
EXTERNAL DEPOSITS OF $500 OR MORE, OR MAINTAINING A $1,000 MINIMUM DAILY
LEDGER BALANCE. VISIT BMOHARRIS.COM FOR DETAILS ON OTHER WAIVER OPTIONS.

EFFECTIVE JANUARY 23, 2016, THERE IS NO CHANGE TO THE $2.50 NON-BMO HARRIS
ATM TRANSACTION FEE ON THIS ACCOUNT, BUT IT WILL NOW BE CHARGED ON THE
BUSINESS DAY YOU USE THE ATM INSTEAD OF AT THE END OF YOUR STATEMENT CYCLE.
WE WILL CHARGE THIS FEE EVEN IF WE HAVE NOT PREVIOUSLY CHARGED IT, UNLESS
YOU ARE CURRENTLY RECEIVING A WAIVER FOR BEING A COLLEGE STUDENT OR A BANK
AT WORK/GROUP BANKING SERVICES CUSTOMER.
QUESTIONS? CONTACT YOUR BANKER OR CALL US AT 888-340-2265.

IF YOU HAVE QUESTIONS ABOUT ANY OF YOUR BMO HARRIS ACCOUNTS, PLEASE CALL US
TOLL-FREE AT 1-888-340-2265. BMO HARRIS BANK(R) IS A TRADE NAME USED BY
BMO HARRIS BANK N.A. MEMBER FDIC. EQUAL HOUSING LENDER, NMLS401052 VISIT US
ONLINE AT WWW.BMOHARRIS.COM.

## CHECKING ACCOUNTS

EVERYDAY CHECKING
ACCOUNT NUMBER     4810614050     (Checking)          ANDRZEJ FABIAN

DEPOSIT ACCOUNT SUMMARY

Previous  Balance as of September 05, 2015          4,035.18
  2 Deposits                    (Plus)              5,170.00
  39 Withdrawals                (Minus)             4,628.98
Ending Balance as of     October   05, 2015          4,576.20

Deposits and Other Credits
  Date          Amount     Description
  Sep 08       4,250.00    TELLER DEPOSIT
  Sep 21         920.00    TELLER DEPOSIT      ← INCOME

Withdrawals and Other Debits
  Date          Amount     Description
  Sep 08        100.00     HARRIS ATM WITHDRAWAL    RECORD NO. 005219    CARD NO. 4667
                           10 HUNTINGTON LANE       WHEELING          IL
  Sep 08        200.00     HARRIS ATM WITHDRAWAL    RECORD NO. 003269    CARD NO. 4667
                           215 EAST PALATINE RD     ARLINGTON HGT     IL



**BMO Harris Bank**

A part of BMO Financial Group

P.O. Box 4320

Carol Stream, Illinois 60197-4320

BMO HARRIS BANK N.A.                    72458
P.O. BOX 94033
PALATINE, IL  60094-4033

**ACCOUNT NUMBER:**       4810614050

030640

01    04202

ANDRZEJ PABIAN
572 WHITE PINE RD
BUFFALO GROVE IL  60089

Statement Period
08/06/15   TO   09/05/15
IH0099002900000000

PAGE     1 OF     3

1000

PLEASE NOTE THAT EFFECTIVE OCTOBER 18, 2015, OUR FUNDS AVAILABILITY POLICY
FOR MOBILE DEPOSITS MAY VARY FROM THE POLICY DESCRIBED IN THE DEPOSIT
ACCOUNT AGREEMENT.  PLEASE REVIEW THE MOBILE BANKING END USER TERMS FOR
THE AVAILABILITY OF FUNDS FOR MOBILE DEPOSITS.

IF YOU HAVE QUESTIONS ABOUT ANY OF YOUR BMO HARRIS ACCOUNTS, PLEASE CALL US
TOLL-FREE AT 1-888-340-2265.  BMO HARRIS BANK(R) IS A TRADE NAME USED BY
BMO HARRIS BANK N.A. MEMBER FDIC. EQUAL HOUSING LENDER. NMLS401052 VISIT US
ONLINE AT WWW.BMOHARRIS.COM.

## CHECKING ACCOUNTS

EVERYDAY CHECKING
ACCOUNT NUMBER    4810614050    (Checking)                ANDRZEJ PABIAN

DEPOSIT ACCOUNT SUMMARY

| Previous Balance as of August | 05, 2015 | 2,653.53 |
|---|---|---|
| 3 Deposits | (Plus) | 5,038.12 |
| 29 Withdrawals | (Minus) | 3,656.47 |
| Ending Balance as of | September 05, 2015 | 4,035.18 |

Deposits and Other Credits

| Date | Amount | Description | | | |
|---|---|---|---|---|---|
| Aug 06 | 3,950.00 | TELLER DEPOSIT | | | |
| Aug 10 | 168.12 | POS MERCHANDISE RETURN | RECORD NO. 324370 | CARD NO. 1266 | |
| | | AVIS COM PREPAY RESERV | 8003527900 | NJ | |
| Aug 24 | 920.00 | TELLER DEPOSIT | | | |

R INCOME

Withdrawals and Other Debits

| Date | Amount | Description | | | |
|---|---|---|---|---|---|
| Aug 06 | 5.00 | DEBIT/ATM CARD FEE | | | |
| | | REFL/EXPED FEE | | | |
| Aug 07 | 17.00 | POS PURCHASE | RECORD NO. 012299 | CARD NO. 1266 | |
| | | SHELL OIL 5754252B6QPS | FORT MYERS | FL | |
| Aug 10 | 30.77 | POINT OF PURCHASE | Check NBR. | 293 | |
| | | POP  WAL-MART STORES PURCHASE | WHEEIL | | |
| Aug 17 | 32.00 | POS PURCHASE W/PIN | RECORD NO. 704467 | CARD NO. 4667 | |
| | | SPEEDWAY 06661 LAP | LA PORTE | IN | |
| Aug 18 | 200.00 | HARRIS ATM WITHDRAWAL | RECORD NO. 008944 | CARD NO. 4667 | |
| | | 215 EAST PALATINE RD | ARLINGTON HTS | IL | |
| Aug 20 | 116.23 | POS PURCHASE | RECORD NO. 827027 | CARD NO. 4667 | |
| | | MAVERICK AUTO PARTS | CHICAGO | IL | |

# Exhibit I

**PNCBANK**   Your account was DEBITED for the following reason:

☐ Check # _____ posted on ___/___/___ ___encoding error ___posted to incorrect account____
☐ Closed account____
☐ Branch adjustment (branch name)____
☐ Service charge exc. 4489618020103306   ☐ CRC    VOL   AUTH CODE 2653
☐ RMS DDA #                                        NON-VOL

| Account Number | File ID |
|----------------|---------|
| 4611525285 | 071 |

NCC 1    AMOUNT $ | 3,694.00 |

PNC Bank, National Association

Client Name  ANDRZEJ FABIAN

Address

FOR BANK USE ONLY
Branch/Dept #    CLC Recovery / 2513  87753    C No
                 800-729-4910  EXT              11/30/11
Prepared By (PRINT Name)    Authorized By
CLARENCE THOMPSON

⑈7409⑈9901⑈  46⑈525285⑈  07⑈0000369400⑈

►031000053◄
PNC BANK TIRILOR PHL PA
(3MXXII PHHI  EI6419
07000530430

Posting Date      2011 Nov 30
Account Number  4611525265

# Free Checking Classic Account Statement
PNC Bank

 **PNC BANK**

Primary account number: 46-1152-5285
Page 1 of 2
Number of enclosures: 0

**For the period 12/23/2011 to 01/25/2012**

013948
ANDRZEJ PABIAN
AGNIESZKA REJMER
572 WHITE PINE RD
BUFFALO GROVE IL 60089-3328

For 24-hour banking, and transaction or interest rate information, sign on to PNC Bank Online Banking at pnc.com.
For customer service call 1-866-PNC-4000
Monday - Friday: 7 AM - 10 PM ET
Saturday & Sunday: 8 AM - 5 PM ET

Para servicio en español, 1-866-HOLA-PNC

**Moving?** Please contact us at 1-866-PNC-4000

✉ Write to: Customer Service
PO Box 609
Pittsburgh PA 15230-9738

Visit us at pnc.com

TDD terminal: 1-800-531-1648
For hearing impaired clients only

We value your relationship with PNC.
For questions about your account,
please call 1-866-PNC-4000.

## Free Checking Classic Account Summary

Andrzej Pabian
Agnieszka Rejmer

Account number: 46-1152-5285
Overdraft Protection has not been established for this account.
Please contact us if you would like to set up this service.

## Balance Summary

| | Beginning balance | Deposits and other additions | Checks and other deductions | Ending balance |
|---|---|---|---|---|
| | 294.33 - | 294.33 | .00 | .00 |
| | | | Average monthly balance | Charges and fees |
| | | | 51.94 - | .00 |

## Transaction Summary

| | Checks paid/ withdrawals | Check Card POS signed transactions | Check Card/Bankcard POS PIN transactions |
|---|---|---|---|
| | 2 | 2 | 1 |
| | Total ATM transactions | PNC Bank ATM transactions | Other Bank ATM transactions |
| | 0 | 0 | 0 |

## Activity Detail

### Deposits and Other Additions

There was 1 Deposit or Other Addition totaling **$294.33.**

| Date | Amount | Description |
|---|---|---|
| 12/29 | 294.33 | Charge Off Credit |

### Daily Balance Detail

| Date | Balance | Date | Balance |
|---|---|---|---|
| 12/23 | 294.33 - | 12/29 | .00 |

# Free Checking Classic Account Statement

For 24-hour information, sign on to PNC Bank Online Banking on pnc.com.

Account number: 46-1152-5285 - continued

For the period 11/24/2011 to 12/22/2011
ANDRZEJ PABIAN
Primary account number: 46-1152-5285
Page 2 of 4

## Activity Detail

### Deposits and Other Additions

| Date | Amount | Description |
|------|--------|-------------|
| 11/28 | 3,210.00 | Deposit Reference No. 138330015 |

There was 1 Deposit or Other Addition totaling $3,210.00.

### Checks and Substitute Checks

| Check number | Amount | Date paid | Reference number | Check number | Amount | Date paid | Reference number |
|--------------|--------|-----------|------------------|--------------|--------|-----------|------------------|
| 2178 | 52.30 | 11/30 | 095066386 | 2179 | 54.54 | 11/30 | 095307336 |

* Gap in check sequence

There were 2 checks listed totaling $106.84.

### Banking/Check Card Withdrawals and Purchases

| Date | Amount | Description |
|------|--------|-------------|
| 11/28 | 43.56 | POS Purchase Wal-Mart #5597 Belvidere Il |
| 11/30 | 40.00 | 3228 Check Card Purchase Ipass Autoreplenish #5 |
| 12/13 | 40.00 | 3228 Check Card Purchase Ipass Autoreplenish #5 |

There was 1 Check Card/Bank card PIN POS purchase totaling $43.56.

There were 2 other Banking Machine/Check Card deductions totaling $80.00.

### Other Deductions

| Date | Amount | Description |
|------|--------|-------------|
| 11/30 | 3,694.00 | Debit Memo Reference No. 502093040 |
| 12/01 | 25.00 | Overdraft Item Fee |
| 12/01 | 25.00 | Overdraft Item Fee |
| 12/05 | 7.00 | Continuous OD Charge - 01 Day |
| 12/06 | 7.00 | Continuous OD Charge - 01 Day |
| 12/07 | 7.00 | Continuous OD Charge - 01 Day |
| 12/08 | 7.00 | Continuous OD Charge - 01 Day |
| 12/09 | 7.00 | Continuous OD Charge - 01 Day |
| 12/12 | 21.00 | Continuous OD Charge - 03 Days |
| 12/13 | 7.00 | Continuous OD Charge - 01 Day |
| 12/14 | 7.00 | Continuous OD Charge - 01 Day |
| 12/15 | 7.00 | Continuous OD Charge - 01 Day |
| 12/16 | 7.00 | Continuous OD Charge - 01 Day |
| 12/19 | 14.00 | Continuous OD Charge - 02 Days |

There were 14 Other Deductions totaling $3,842.00.

### Daily Balance Detail

| Date | Balance | Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|------|---------|
| 11/24 | 568.07 | 12/05 | 163.33 - | 12/09 | 191.33 - | 12/15 | 273.33 - |
| 11/28 | 3,794.51 | 12/06 | 170.33 - | 12/12 | 212.33 - | 12/16 | 280.33 - |
| 11/30 | 106.33 - | 12/07 | 177.33 - | 12/13 | 259.33 - | 12/19 | 294.33 - |
| 12/01 | 156.33 - | 12/08 | 184.33 - | 12/14 | 266.33 - | | |

*Andrzej Pabian*
*572 White Pine Road*
*Buffalo Grove, Illinois 60089*
*(708) 288-3991*

17 September 2014                    Via Certified Mail # **7014 0510 0001 1585 9320**

PNC Bank
P.O. Box 609
Pittsburgh, Pennsylvania 15230

Re:     $3,694.00 debit made November 30, 2011
        Account No. 46-1152-5285

To whom it may concern:

I recently requested an explanation of why $3,694.00 was taken from my above-referenced
account on November 30, 2011. I was given the enclosed printout as the "reason" for the debit.
However, I am unable to determine the actual reason for the debit, since all the information in
the document is in some type of numerical code.

Please explain, in plain English, the reason for the debit, and/or provide the definitions for the
coded references in the attached document titled "Your account was DEBITED for the following
reason:" so that I may understand why you took the amount from my checking account.

I am also enclosing the monthly statement when the debit occurred, which also lists several
overdraft charges that were incurred solely as a result of the debit in question.

Thank you for your attention to this matter.

Sincerely,

Andrzej Pabian

Enclosures:
1. Reason for Debit
2. Monthly Statement for the period November 24, 2011 to December 22, 2011

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

PNC BANK

P.O BOX 609

PITSBURGH, PA 15230

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Priority Mail Express™
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7014 0510 0001 1585 9320

PS Form 3811, July 2013    Domestic Return Receipt

## EXHIBITS

..............Complaines ....................................................................................19  pages


Exhibit  A    Copy Note From 11ch 23526.....................................................5  pages

Exhibit  B    Orginal Note................................................................................5 pages

Exhibit  C    Mortgage Cook County Recod....................................................8  pages

Exhibit  D   Guaranteed REMIC Pass-Through Certificates............................7  pages

Exhibit  E    Affidavit of Joseph Esquivel..........................................................9 pages

Exhibit  F   Loan Modiffication...........................................................................5  pages

Exhibit  G   Bank correspondence..................................................................14  pages

Exhibit  H   Not real Monthly Gross Income......................................................4  pages

Exhibit  I   Money stolen from the account .........................................................5

| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (12/01/20) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

### MUNICIPAL DEPARTMENT, _____ MUNICIPAL DISTRICT

Name all Parties

ANDRZEJ PABIAN

Plaintiff(s)

v.

Case No.

> 2023CH00201
> Judge: Calendar, 9

PNC BANK , MIDAMERYKA BANK
NATIONAL CITY         Defendant(s)

2650 WARRENVILLE RD #400

DOWNERS GROVE, IL 60515

Address of Defendant(s)

Please serve as follows (check one):   ○ Certified Mail   ☒ Sheriff Service   ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

To file your written appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE.** You will need: a computer with internet access; an email address; a completed Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp; and a credit card to pay any required fees.

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org
Page 1 of 3

**Summons - Alias Summons**                                    **(12/01/20) CCG 0001 B**

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www. illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

Please call or email the appropriate clerk's office location (on Page 3 of this summons) to get your court hearing date AND for information whether your hearing will be held by video conference or by telephone. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

NOTE: Your appearance date is NOT a court date. It is the date that you have to file your completed appearance by. You may file your appearance form by efiling unless you are exempted.

A court date will be set in the future and you will be notified by email (either to the email address that you used to register for efiling, or that you provided to the clerk's office).

CONTACT THE CLERK'S OFFICE for information regarding COURT DATES by visiting our website: cookcountyclerkofcourt.org; download our mobile app from the AppStore or Google play, or contact the appropriate clerk's office location listed on Page 3.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

O Atty. No.. _____                    Witness date   JAN 9 2023

☒ Pro Se 99500

Name: _____                           IRIS Y. MARTINEZ JAN 0 9 2023

Atty. for (if applicable):                  IRIS Y. MARTINEZ, Clerk of Court **IRIS Y. MARTINEZ**
                                            **CLERK OF CIRCUIT COURT**
                                            ☐ Service by Certified Mail: _____

Address: _1749 W. GOLF RD   187_            ☐ Date of Service: _____
                                            (To be inserted by officer on copy left with employer or other person)
City: _MT. PROSPECT_

State: _IL_  Zip: _60056_

Telephone: _708 288-3991_

Primary Email: _andrewp828 @ gmail. com_

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:  (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:  (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:  (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:  (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:  (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:  (708) 232-4551

Chancery Division Civil Cover Sheet
General Chancery Section

(12/01/20) CCCH 0623

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

ANDRZEJ PABIAN

Plaintiff

v.

PNC BANK, MIDAMERICA BANK
NATIONAL CITY BANK

Defendant

Case No: 2023CH00201
Judge: Calendar, 9

CHANCERY DIVISION CIVIL COVER SHEET
GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet – General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

Only one (1) case type may be checked with this cover sheet.

0005 ☐ Administrative Review
0001 ☒ Class Action
0002 ☐ Declaratory Judgment
0004 ☐ Injunction

0007 ☐ General Chancery
0010 ☐ Accounting
0011 ☐ Arbitration
0012 ☐ Certiorari
0013 ☐ Dissolution of Corporation
0014 ☐ Dissolution of Partnership
0015 ☐ Equitable Lien
0016 ☐ Interpleader

0017 ☐ Mandamus
0018 ☐ Ne Exeat
0019 ☐ Partition
0020 ☐ Quiet Title
0021 ☐ Quo Warranto
0022 ☐ Redemption Rights
0023 ☐ Reformation of a Contract
0024 ☐ Rescission of a Contract
0025 ☐ Specific Performance
0026 ☐ Trust Construction
0050 ☐ Internet Take Down Action (Compromising Images)

☐ Other (specify) _____

Atty. No.: _____  ☒ Pro Se 99500

Atty Name: _____

Atty. for: _____

Address: 1749 W. GOLF RD    187

City: MT. PROSPECT    State: IL

Zip: 60056

Telephone: 708 288 - 3991

Primary Email: andrewp828@gmail.com

Pro Se Only: ☒ I have read and agree to the terms of the Clerk's Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: andrewp828@gmail.com

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois
cookcountyclerkofcourt.org
Page 1 of 1

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit courts.

| STATE OF ILLINOIS, CIRCUIT COURT COOK COUNTY | NOTICE OF MOTION TO APPOINT SPECIAL PROCESS SERVER | For Court Use Only |
|---|---|---|

FILED - CH, CLERK OF THE CIRCUIT COURT, CHANCERY DIVISION, 2023 FEB -1 AM 10:57, IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT, COOK COUNTY

**Instructions**

Directly above, enter the name of the county where you are filing the case.

Enter your name as Plaintiff/Petitioner.

Enter the names of all people you are suing as Defendants/Respondent

Enter the case number the Circuit Clerk has given you.

ANDRZEJ PABIAN
Plaintiff/Petitioner *(First, middle, last name)*

v.

Defendants/Respondents *(First, middle, last name)*.
PNC BANK
NATIONAL CITY
MIDAMERICA BANK

2023CH00201
**Case Number**

In 1a, enter the date and time of your hearing. Call your Circuit Clerk to find out how to get this information. If you are e-filing in Cook County, you will get the court date when you e-file.

In 1b and 1c, fill out:
-The courtroom and address of the courthouse.
-The call-in or video information for remote appearances (if applicable).
-The clerk's phone number and website.
All this information is available from the Circuit Clerk, you can find their contact information at: illinoiscourts.gov/courts/circuit-court/circuit-court-clerks/.

**1. Hearing Information**

The reasons for this hearing are listed in the attached *Motion to Appoint Special Process Server*. The hearing for the *Motion* is scheduled for:

a. Date: 02-14-23 Time: 9:00 ☒ a.m. ☐ p.m

b. **In-person at** ______
*Street Address City State ZIP*

Courtroom ______

OR

c. **Remotely** (You may be able to attend this court day by phone or video conference This is called a "Remote Appearance.")

By telephone: 312-626-6799
*Call-in number for telephone remote appearance*

By video conference: ZOOM
*Video conference website*

Meeting ID: 956 5899 1093, Password: 129359
*Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk at: (312) 603-5133 or visit their website
*Circuit Clerk's phone number*

at: ______ to find out more about how to do this.
*Website*

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**I certify that everything in the *Notice of or Motion to Appoint Special Process Server* is true and correct. I understand that making a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.**

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name.

Enter your complete current address, telephone number, and email address, if you have one.

/s/ [signature]
*Your Signature*

1749 W. GOLF RD 187
*Street Address, Unit #*

ANDRZEJ PABIAN
*Print Your Name*

MT. PROSPECT, IL 60056
*City, State, ZIP*

andrewp828@gmail.com
*Email*

708 288-3991
*Telephone*

*Atty # (if any)*

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

Enter the Case Number given by the Circuit Clerk: _2023 CH 00201_

## PROOF OF DELIVERY

**1.** I am sending *Notice* and *Motion to Appoint Special Process Server*

<table>
<tr><td style="border:1px solid">In 1a, enter the name, mailing address, and email address of the party you are sending the documents to. If they have a lawyer, you must enter the lawyer's information.</td><td>

a. To.
Name:     PNC   BANK
       *First*           *Middle*          *Last*
Address:   2650 WARRENVILLE Rd   DOWNERS GROVE   IL   60515
         *Street, Apt #*        *City*        *State*    *ZIP*
Email address: _____ #400

</td></tr>
</table>

In 1b, check the box to show how you are sending the documents.

CAUTION: If you and the person you are sending the documents to have an email address, you must use one of the first two options. Otherwise, you may use one of the other options

b. By:
- [ ] An approved electronic filing service provider (EFSP)
- [ ] Email *(not through an EFSP)*

*Only use one of the methods below if you do not have an email address, or the person you are sending the documents to does not have an email address.*
- [ ] Personal hand delivery to:
  - [ ] The party
  - [ ] The party's family member who is 13 or older, at the party's residence
  - [ ] The party's lawyer
  - [ ] The party's lawyer's office
- [x] Mail or third-party carrier

In c, fill in the date and time that you are sending the documents.

c. On: _____ at: _____ [ ] a.m. [ ] p.m
      *Date*            *Time*

In 2, if you are sending the document(s) to more than 1 party or lawyer, fill in a, b, and c. Otherwise leave 2 blank.

**2.** I am sending this document(s):

In 2a, enter the name, mailing address, and email address of the party you are sending the document(s) to. If they have a lawyer, you must enter the lawyer's information.

a. To
Name:       N / A
       *First*           *Middle*          *Last*
Address: _____
         *Street, Apt #*        *City*        *State*    *ZIP*
Email address: _____

In 2b, check the box to show how you are sending the documents.

CAUTION: If you and the person you are sending the documents to have an email address, you must use one of the first two options. Otherwise, you may use one of the other options

b By
- [ ] An approved electronic filing service provider (EFSP)
- [ ] Email *(not through an EFSP)*

*Only use one of the methods below if you do not have an email address, or the person you are sending the documents to does not have an email address.*
- [ ] Personal hand delivery to.
  - [ ] The party
  - [ ] The party's family member who is 13 or older, at the party's residence
  - [ ] The party's lawyer
  - [ ] The party's lawyer's office
- [ ] Mail or third-party carrier

In c, fill in the date and time that you are sending the documents

c On: _____ at: _____ [ ] a.m. [ ] p.m.
      *Date*            *Time*

Enter the Case Number given by the Circuit Clerk  2023 CH 00 201

If you are sending your documents to more than 2 parties or lawyers, check the box and file the *Additional Proof of Delivery* with this form.

☐ I have completed an *Additional Proof of Delivery* form.

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

I certify that everything in the *Proof of Delivery* is true and correct. I understand that a false statement on this form is perjury and has penalties provided by law under **735 ILCS 5/1-109.**

/s/ _____
Your Signature

1749 W. GOLF RD         187
Street Address

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name

ANDRZEJ PABIAN
Print Your Name

MT. PROSPECT  IL  60056
City, State, ZIP

andrewp 828 @ gmail.com
Email

708 288-3991
Telephone

_____
Attorney # (if any)

Enter your complete address, telephone number, and email address, if you have one.

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

FILED-CH
CLERK OF THE CIRCUIT COURT
CHANCERY DIVISION

2023 FEB -1 AM 10: 57

IRIS Y MARTINEZ
CLERK OF THE COURT
OF COOK COUNTY

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | MOTION TO APPOINT SPECIAL PROCESS SERVER | For Court Use Only |
|---|---|---|
| COOK COUNTY | | 2023 CH 02 89 |

**Instructions ▼**

Directly above, enter the name of the county where you are filing the case.

ANDRZEJ PABIAN
Plaintiff/Petitioner *(First, middle, last name)*

Enter your name as Plaintiff/Petitioner.

v.

Enter the names of all people you are suing as Defendants/Respondents.

Defendants/Respondents *(First, middle, last name)*.
PNC BANK
NATIONAL CITY
MIDAMERICA BANK

Enter the case number the Circuit Clerk has given you.

**Case Number** 2023 CH 02 89

---

**In 1, check 1a or 1b.**

Check 1a if you had the sheriff attempt to serve and enter the names of the Defendants/Respondents who were not served.

Check 1b if you did not have the sheriff attempt to serve and enter the reasons you need a special process server.

**1.** Service in this case *(check one)*:

☒ a. Was attempted by the sheriff but they were unable to serve these Defendants/Respondents: _____

NO ONE COULD COME DOWN

The sheriff filed a report confirming this fact; OR ( EXHIBIT A )

☐ b Has not been attempted by the sheriff, but I need a special process server because: _____

---

**In 2, enter the name and address of the person or company who will serve the Complaint/Petition**

**2.** The Plaintiff/Petitioner asks the court to appoint the following person or company to serve the *Summons* and Complaint/Petition:

CHICAGO PI GRUP
*Name of Person or Company*

1313 N. RAND RD ARLINGTON HTS    IL  60004
*Street Address, Unit #*      120 W. UNIVERSITY   *City*      *State*   *ZIP*
                              DR  SUITE A

---

**In 3, check only one box. If you check 3a, enter the license number.**

**3.** The above-named special process server:

☒ a is a licensed private detective or private detective agency,

license 117001738 . DUPAGE 115002488
*Number*

☐ b is over age 18 and is neither a party to this case nor a licensed private detective or private detective agency.

---

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

I certify that everything in this *Motion to Appoint Special Process Server* is true and correct. I understand that making a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print it.

/s/ _____
*Your Signature*

1749 W. GOLF RD
*Street Address, Unit #*

ANDRZEJ PABIAN
*Print Your Name*

MT. PROSPECT IL 60056
*City, State, ZIP*

Enter your complete address, telephone number, and email address, if you have one.

andrewp8280@gmail.com  708 288-3791
*Email*        *Telephone*       *Attorney # (if any)*

---

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

## SHERIFF'S OFFICE OF DUPAGE COUNTY, ILLINOIS

TYPE: SUM

DEPUTY: 443

DOCKET #: 32023-9-154733   CASE #:  23CH201 - 001              ORIGIN #:  002

FILED:   01/09/2023     RECEIVED:  01/09/2023     RETURN BY:  02/08/2023    # OF WORKSHEETS:   1

DEFENDANT:  PNC BANK

HOME ADDRESS:                  WORK ADDRESS:

                                      2650 WARRENVILLE RD
                                      #400
                                      DOWNERS GROVE, IL 60515

PLAINTIFF:  PABIAN, ANDRZEJ                        OPERATOR ID:   589

*****************************************************************************************************************

I CERTIFY THAT I SERVED THIS SUMMONS AND COMPLAINT ON THE DEFENDANT AS FOLLOWS

\_\_ **1.**  PERSONAL SERVICE· BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT WITH THE NAMED DEFENDANT PERSONALLY

\_\_ **2.**  SUBSTITUTE SERVICE: BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH SOME PERSON OF THE FAMILY OR PERSON RESIDING THERE, OF THE AGE OF 13 YEARS OR UPWARDS, AND INFORMING THAT PERSON OF THE CONTENTS THEREOF. ALSO, A COPY OF THE DOCUMENT WAS MAILED TO THE DEFENDANT AT THE ABOVE ADDRESS.     DATE.   INITIALS:

\_\_ **3.**  BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT WITH THE REGISTERED AGENT, AUTHORIZED PERSON, OR PARTNER OF THE DEFENDANT

*****************************************************************************************************************

I], SHERIFF, BY:          ABBATACOLA  #443  DEPUTY

1. SEX:    RACE:               AGE:     HEIGHT:             WEIGHT:

2. WRIT SERVED ON:                    RELATION:

   SERVED ON:

ADDITIONAL COMMENTS:   SECURITY CALLED UPSTAIRS  EVERYONE IS WORKING AT HOME  NO ONE COULD COME DOWN

THE NAMED DEFENDANT WAS NOT SERVED.  REASON NOT SERVED:

   \_\_ 01 MOVED            \_\_ 02 NO CONTACT        \_\_ 03 AVOIDING: SEE COMMENTS

   \_\_ 04 NOT LISTED         \_\_ 05 WRONG ADDRESS    \_\_ 06 NO SUCH ADDRESS

   \_\_ 07 EMPLOYER REFUSAL   \_\_ 08 RETURNED BY ATTY   \_\_ 09 DECEASED

   \_\_ 10 NO LONGER EMPLOYED  X 11 OTHER  SEE COMMENTS

ATTEMPTED SERVICES:     DATE          TIME         DEPUTY #
                      01/17/2023     11·50 AM      443

AMOUNT RECEIVED:   $63 00        CC

DEPUTY SIGNATURE:   *Robert attacola #443*

Original Digital Copy

FILED-CH
CLERK OF THE CIRCUIT COURT
CHANCERY DIVISION

2023 FEB -1  AM 10: 56

IRIS Y MARTINEZ
CLERK OF THE COURT
OF COOK COUNTY

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | ORDER APPOINTING SPECIAL PROCESS SERVER | For Court Use Only |
|---|---|---|
| COOK COUNTY | | |

**Instructions ▼**

Directly above, enter the name of the county where you are filing the case.

Enter your name as Plaintiff/Petitioner.

Enter the names of all people you are suing as Defendants/Respondents.

Enter the case number the Circuit Clerk has given you.

ANDRZEJ  PABIAN
**Plaintiff/Petitioner** *(First, middle, last name)*

v.

**Defendants/Respondents** *(First, middle, last name)*:
PNC  BANK
NATIONAL  CITY
MIDAMERICA  BANK

2023 CH 00201
**Case Number**

---

In **1**, enter the date the *Motion* was filed.

In **2**, enter the name of the person or company who will serve the Complaint/Petition, and the Defendants/Respondents to be served.

**1.** Plaintiff/Petitioner's *Motion to Appoint Special Process Server* was filed on _____
                                                                                    *Date*

**2.** ☐ The *Motion* is granted. _____
                                        *Name of Person or Company*
    is appointed to serve these Defendants/Respondents: _____
    _____

☐ The *Motion* is denied. It is denied because *(state specific reason)* _____
    _____
    _____

---

DO NOT complete this section. The judge will sign and date here.

**ENTERED:**

_____          _____
*Judge*                                          *Date*

MS-O 904 1                          Page 1 of 1                          (08/20)